**J. B. ISAAC, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 25397.**

United States Court of Appeals, Ninth Circuit.

Aug. 10, 1970.

Rehearing Denied Sept. 2, 1970.

Volney V. Brown, Jr. (argued), Beverly Hills, Cal., for appellant.

Richard L. Jaeger (argued), Asst. U. S. Atty., Wm. M. Byrne, Jr., U. S. Atty., Robt. L. Brosio, Chief, Criminal Division, Los Angeles, Cal., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and THOMPSON,* District Judge.

THOMPSON, District Judge:

Appellant Isaac was tried under an indictment charging conspiracy with Hunter and Logan to utter and pass counterfeit Federal Reserve Notes, three substantive counts of specific instances of uttering and passing a counterfeit note and one substantive count of possession of twenty-six counterfeit notes with intent to defraud. Isaac was found guilty on Count I of the conspiracy charge, Count VIII charging passing a counterfeit note at Saenz Burger Stand on June 11, 1969, and Count XII charging possession of twenty-six counterfeit notes.

The evidence favorable to the Government's case which supports the convictions may be summarized as follows:

Sally Diaz observed defendant Isaac attempt to pass a $10 Federal Reserve Note to Terry Diaz at the Baker's Taco & Burger Stand in Redlands, California, on June 10, 1969, in payment for a drink. When she did not accept the $10 bill, Isaac paid for the drink with other money. Defendant Isaac was accompanied by Robert Logan. Defendant Hunter passed a $10 Federal Reserve Note on that same day to Maria Hernandez, a counter waitress at the Taco Blanco Stand in Redlands, California, in payment for a small coke.

Positive photographic identifications were made by Sally Diaz and Maria Hernandez to Detective Louis Moreno of the Redlands Police Department during the course of his investigation of the case. Miss Diaz picked out Isaac and Logan from a spread of five photographs, and Miss Hernandez selected defendant Hunter from the same spread of photographs.

On June 11, 1969, defendant Isaac gave a $10 counterfeit Federal Reserve Note to Mary Rosales, the manager of the Saenz Taco Stand in Colton, California, in payment for a burrito and a drink. Defendant Isaac was accompanied by defendant Robert Logan who also purchased a burrito and a drink with a counterfeit $10 bill. Later that same day, Miss Rosales identified defendant Isaac as one of the men who had passed the counterfeit money to her. Miss Rosales had been shown photographs of Isaac and Logan some time prior to the trial, but she testified that her in-person recollection of Isaac weighed most heavily in her memory.

The owner of the Saenz Taco Stand, Armando Saenz, identified Logan as being at his place of business on June 11, 1969. He recognized Logan as being the very same person for whom he had cashed a stolen money order on a previous occasion. Miss Rosales had shown the two counterfeit $10 bills to him.

Pauline Saenz, Armando Saenz's wife, testified that defendant Hunter attempted on June 11, 1969 to give her a $10 bill in payment for a pack of cigarettes at the Saenz Market, but she refused to accept it because it was counterfeit. She requested Paul Guillen to follow Hunter from the market. Guillen followed Hunter to a Pontiac, License No. WYZ 190. He observed two other men seated in the Pontiac.

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

On June 11, 1969, Robert Logan gave a $10 bill to Lorraine Kelley, a waitress at the A & W in Colton.

Defendants Isaac and Hunter, together with Logan, were arrested by officers of the Colton Police Department on June 11. The automobile in which they were riding at the time of their arrest was a Pontiac, California License No. WYZ 190. A thorough search of the vehicle uncovered an envelope hidden behind the glove compartment which contained twenty-six $10 Federal Reserve Notes.

Defendant Isaac was driving the subject Pontiac when it was stopped by the Colton police. His name was on the face of the envelope containing the twenty-six $10 bills. He admitted that the Pontiac was owned by his sister and that he had been in the automobile throughout the entire day on June 11. He further admitted that the envelope containing the twenty-six $10 bills was his.

A criminal investigator for the United States Secret Service, whose expert qualifications on counterfeiting were stipulated to by the defendants, stated that the twenty-six $10 bills were counterfeit and had a common origin with the $10 bills passed at the Saenz Taco Stand, the A & W Root Beer and the Taco Blanco Stand. The $10 bills passed at these three establishments were also determined to be counterfeit.

The original indictment returned on June 25, 1969, charged the defendants only with transactions on June 11, 1969. On September 2, 1969, a second indictment was returned charging transactions on both June 10 and June 11, 1969. Just prior to the commencement of the trial of Isaac and Hunter under the second indictment on September 4, 1969, the co-defendant Logan entered a plea of guilty to the conspiracy count on the first indictment and avoided trial.

After the Government rested its opening case, Logan was called as the first witness for the defendants on trial and testified:

"Q. Mr. Logan, are you the Robert Lee Logan who is mentioned in the indictment that is before the Court today?

"A. Yes, sir.

"Q. And have you heretofore entered a plea of guilty to one count of that indictment?

"A. Yes, sir."

Logan then related testimony regarding occurrences on June 11, 1969 which, if believed, tended to exculpate Isaac and Hunter and place the onus of the offenses entirely on Logan.

The United States Attorney started his cross-examination in the manner copied in the margin.[1]

1. "Q. Mr. Logan, your testimony regarding the going in Mr. Isaac's car with Mr. Hunter, that occurred on what, June 11?
"A. Yes, Sir.
"Q. Whose car was that?
"A. Mr. Isaac's. He was driving it.
"Q. Was that the same car in which you were arrested?
"A. Yes, sir.
"Q. You were with Mr. Isaac and Mr. Hunter on June 10 as well, weren't you?
"A. No, sir.
"Q. You were not?
"A. No, sir.
"Q. You were in a crap game, weren't you, on the night of June 10?
"A. I was in a crap game on June 10.
"Q. Were you with Mr. Isaac or Mr. Hunter on June 10 during the day?
"A. No, sir.

"Q. You testified you pleaded guilty in this case to a conspiracy count, is that correct?
"A. Yes, sir.
"MR. BROWN: Your Honor, I object. He didn't testify as to which count he pled to. I would suggest it is immaterial and ask that the jury be cautioned to disregard the comments of counsel.
"THE COURT: You opened the door and this is cross examination. Your objection is overruled.
"BY MR. JAEGER:
"Q. You did plead guilty to a conspiracy count, didn't you?
"A. Yes, sir.
"Q. And you had read that conspiracy count, had you, or it had been read to you?
"A. It had been read to me.

The cross-examination continued in the same vein, Logan persistently denying any complicity in events on June 10, 1969, as alleged in the second indictment and the United States Attorney just as persistently attempting to impeach him by his plea of guilty to conspiracy. It was not until after the noon recess and a conference with Logan's attorney that it was understood that both Isaac's attorney and the United States Attorney had been referring to the wrong indictment under which Logan had pleaded. Accordingly, the Court gave the jury the proper and easily understandable corrective instruction which is copied in the margin.[2]

The defendant's proposed jury instruction was rejected by the Court. It read:

"Evidence of a plea of guilty by Robert Logan to the offense of conspiracy involving overt acts occurring June 11, 1969, shall not be considered by you in determining the guilt or innocence of either defendant."

Instead, the Court gave an instruction proposed by the Government, as follows:

"The plea of guilty to conspiracy by Robert Lee Logan, a witness in this case, shall be considered as evidence in this case only insofar as it concerns the guilt of these defendants of conspiring to pass and possess counterfeit $10 Federal Reserve Notes on June 11, 1969. You may, however, consider Mr. Logan's plea of guilty in determining what credibility to give his testimony."

The net result of these occurrences is an assignment of error by Isaac, the principal thrust of which is that the instruction to the jury is erroneous and prejudicial.

The point has been briefed as if we were concerned with the rule that a co-

---

"Q. And that conspiracy count read in part: 'From on or about June 10, 1969, and continuing to on or about June 11, 1969, in San Bernardino County, California, within the Central District of California, defendants J. B. Isaac, John Albert Hunter and Robert Lee Logan agreed, confederated and conspired together to commit an offense against the United States, as follows: With intent to defraud, to utter, pass, publish and sell and attempt to pass, utter, publish and sell and with like intent to have in their possession falsely made, forged and counterfeited obligations of the United States, viz. Federal Reserve Notes of a $10 denomination, in violation of Title 18, United States Code, Section 472.'

"The conspiracy count goes on to state the number of overt acts.

"You recall that, don't you?

"A. No, sir. The one I read was regarding June 11."

2. "Ladies and gentlemen of the jury, I must call your attention to one or two things before we proceed with the taking of testimony and the consideration of this case.

"This morning the witness Logan was on the stand and was being cross examined by the Government lawyer on his supposed participation in some acts that occurred on the 10th of June. As a matter of fact, I as judge participated in some of the questions that were asked that witness and read from Count I of the indictment upon which the present defendants Isaac and Hunter are being tried on.

"I am afraid we slipped into error because we were using the wrong document, and the witness Logan pled guilty to Count I of another form of indictment that did not allege that he had any participation with these two defendants in any criminal acts occuring on June 10. That indictment alleges only that he had some participation in acts on June 11.

"So any attempt on the part of either this Court or the Government lawyer to impeach the testimony of the witness Logan, to impeach his denial that he saw these two defendants on June 10, must be dispelled from your minds. We were proceeding, as I say, by reading from the document that we are on trial with rather than from the one that the witness Logan pled guilty to.

"So that part of his testimony, when he insisted that he had not pled to a count that involved June 10, is exactly correct. He was correct in it. So you shall not use any portion of the interrogation of that witness for impeachment concerning whether he was or was not with these two defendants on June 10.

"However, if there is any other evidence that connects this witness Logan with these two defendants on trial on June 10 you have a right to consider that."

defendant's plea of guilty may not be *offered by the Government* and received over objection as evidence against the defendant on trial; Babb v. United States, 218 F.2d 538 (5th Cir. 1936), United States v. Toner, 173 F.2d 140 (3rd Cir. 1949); Leroy v. Government of Canal Zone, 81 F.2d 914 (5th Cir. 1936); Payton v. United States, 96 U.S. App.D.C. 1, 222 F.2d 794, 1955; and with the companion rule that the reception of such evidence is not reversible error if the Court instructs the jury that the guilty plea cannot be considered as evidence against the defendants on trial but only as possible impeachment of the witness. Baker v. United States, 393 F.2d 604 (9th Cir. 1968); United States v. Baete, 414 F.2d 782 (5th Cir. 1969).

■ We do not so analyze the situation presented by this record. As a choice of trial tactics, defendant, not the Government, elected to elicit the fact of the guilty plea from the witness. True, he sought to walk a narrow plank and to object to permitting the Government to bring out the offense (conspiracy) pleaded to, but we agree with the trial judge that the defendant having opened the door, so to speak, the jury was entitled to know the charge in the indictment to which the plea was entered. Cf. Bohol v. United States, 227 F.2d 330 (9th Cir. 1955); United States v. White, 377 F.2d 908 (4th Cir. 1967). The evidence so introduced by the defendant himself was not subject to any limiting instruction. It could be considered by the jury in any way that it was relevant and probative. Here its impact was twofold—for its bearing on the credibility of the witness and as an admission that a conspiracy existed. True, for the latter purpose, it was hearsay as to the defendants on trial, but objectionable hearsay is nevertheless probative if offered by the defendant or received without objection. 30 Am.Jur.2d 268, § 1103; Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912):

"As here the accused, by his voluntary act, placed in evidence the testimony disclosed by the record in question, and thereby sought to obtain an advantage from it, he waived his right on confrontation as to that testimony and cannot now complain of its consideration."

If the defendant had chosen to leave the entire matter of the guilty plea to cross-examination, the rules he contends for would have been applicable.

■ Further, even if the instruction as given be considered error, it is not reversible error under Rule 52(b). We are dealing with an instruction to the effect that a prior inconsistent statement made by the witness may be considered as substantive evidence and not solely for impeachment. This is not an error of constitutional dimension, State of California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, 1970, and the requirement of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) and Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), that we must find the error harmless beyond a reasonable doubt, does not obtain. If the error does not affect the substantial rights of the accused, it may be disregarded. Rule 52, Federal Rules of Criminal Procedure.

■ In the context of all the evidence, which we have hereinabove summarized, the impact of the instruction objected to must have been quite insignificant. Compare Feldstein v. United States, 429 F.2d 1092 (9th Cir., 1970). Further, while the rule that a prior inconsistent statement may be used only for impeachment and not as substantive evidence is the present law of this Circuit, Benson v. United States, 402 F.2d 576 (9th Cir. 1968), the author of that opinion, as well as most modern authority, deems the rule archaic and illogical. See California v. Green, 399 U.S. 149, Fn. 6, 90 S.Ct. 1930 (1970). California has adopted the modern view by statute. California Evidence Code, § 1235. The error, then, relates to a rule of evidence of questionable soundness and it is less difficult to view it as an error which does

not affect the substantial rights of the appellant. Finally, it is debatable whether a jury of average sensibility and intelligence should have been expected to abide by a limiting instruction that the guilty plea could be considered only for its bearing on credibility. To anticipate such a "mental gymnastic" from a juror has been criticized in other circumstances. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933). So, failure to give such a limiting instruction should have less weight as an error requiring reversal of a conviction under Rule 52(b).

The judgment is affirmed.