**UNITED STATES of America**

v.

**Richard Joseph BEEDLE a/k/a Richard Bedle, Appellant.**

**No. 71–1697**

United States Court of Appeals, Third Circuit.

Argued March 7, 1972.

Decided July 6, 1972.

---

W. Paul Flynn, Kopkind & Flynn, New Haven, Conn., for appellant; Joseph L. Loughran, Philadelphia, Pa., on the brief.

Robert N. deLuca, Asst. U. S. Atty., Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., for appellee.

Before BIGGS, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The defendant-appellant was tried to a jury on a four-count indictment charging him with armed bank robbery on April 9, 1970 of the Industrial Valley Bank (the Bank), a government insured institution, in violation of 18 U.S.C. §§ 2113(a), 2113(b) and 2113(d). The jury found him guilty and he was sentenced generally to twenty years imprisonment. United States v. Corson, 449 F.2d 544 (3 Cir. 1971).

Two of the robbers, Viola and Devlin, have admitted their complicity, Beedle on the other hand has denied any connection with the robbery and no one within the Bank was able to link him with the crime.

Beedle was arrested for this robbery as a result of Viola's implicating statements. According to Viola's testimony, Beedle arrived in Howell Township, New Jersey between 5:00 and 6:00 P.M. on the evening of April 8, 1970 driving his blue 1966 Ford Galaxie, and Beedle registered at the Moon Motel under the pseudonym of Civitello. Viola testified that Beedle and he later went to Moms McCarthy's boarding house where they met Devlin, and around 8:00 P.M. Beedle and Devlin went out to eat. Viola spent the evening at the apartment of a female friend. The Government conceded at trial that it could not substantiate Viola's claim that Beedle had registered at the Moon Motel. The FBI could not find in the Moon Motel records that anyone named Civitello had been registered there on the evening of April 8, 1970.

Before 8:00 A.M. on the morning of the robbery, Viola testified that he met Beedle at the Moon Motel and Devlin at Moms McCarthy's, and each drove to Allentown in separate vehicles. In Allentown they stole a "get-away" car and arrived at the bank at about 10:30 A.M. After the robbery, Viola stated that the three men drove back to Moms McCarthy's boarding house and divided up the robbery proceeds, giving the greatest portion to Beedle. Viola claimed he did not see Beedle again until Viola's arrest for another bank robbery in Howell, New Jersey.

Devlin's story of the robbery deviated radically from that of Viola. The most significant deviation was that Devlin insisted that Beedle was not the third man, and was not implicated in the robbery. He called Viola a liar for implicating Beedle in the crime. Devlin claimed that Viola hated Beedle and would not associate with him due to a heated argument between them in 1968.

Beedle's main defense to the charges was an alibi that placed both him and his blue 1966 Ford Galaxie in Connecticut during the times on April 8 and 9 that Viola stated he saw Beedle in Allen-

town, Pennsylvania and Howell Township, New Jersey. Witnesses also testified that on the evening of April 8, Beedle and his wife were seen arriving at their home in Connecticut in the Ford Galaxie. A bill for automotive maintenance on the Ford Galaxie was received in evidence. That bill and testimony of a service station owner, Kaminsky, indicated that Beedle left his Ford at Kaminsky's service station in Orange, Connecticut on April 9, at about 9:00 to 10:00 o'clock in the morning.

At trial, the District Court Judge gave inconsistent and confusing instructions in his jury charge. He was referring to the alibi evidence when he first told the jury that " . . . [i]f after consideration of all of the evidence in the case you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you should acquit him. On the other hand, if you do not, by the same token, and regardless of how you deduce the testimony and what weight you give to it, if you have no reasonable doubt, then of course you should convict him, but an alibi is a proper defense." [1]

Later, near the end of his jury charge, the Judge commented still further on the defendant's alibi and his burden of proof: "Now, members of the jury, I talked to you about credibility and I am not going to go into details of the evidence. You heard this over the past four or five days and you will recall it, and rather than emphasize any one particular phase of it, perhaps I will not go into detail. I will summarize it, however, and we will first talk about the alibi witnesses again.

"As I say, I find inconsistencies. That may be unimportant, it may have no bearing at all as far as what you determine, but you must consider that evidence carefully because, as I have said, if this man was in Connecticut on April 9 he couldn't have been in Allentown, it is just that simple.

"The defense has presented witnesses here from which you could conclude if you believe it that he was there, but you must be satisfied that he was there and *you must be satisfied beyond a reasonable doubt that he was not there*, that he was in New Jersey, if you are going to convict him.

"Now, as to the other two witnesses, the Government said in the opening and has said throughout this trial that they rely expressly on the testimony of Viola. Now, I won't go into all of the details, but my recollection is that Viola testified to every step of the proceedings from beginning to end; as to the meeting with Beedle in New Jersey, the going to Allentown, the casing of the bank, so to speak, and the robbery, and described it in detail and Beedle's participation; that Beedle was the third man.

"Incidentally, we didn't have the benefit of who the third man was from Mr. Devlin, unfortunately, but nevertheless it is a fact there were three men, and Viola says it was Beedle, and he went into great detail as to every movement that was made. The statements that he made as I recall them—and bear in mind again it is your recollection that prevails—the steps that he described in the bank almost to the last detail could be precisely compared with the statements of the other witnesses, the manager and the tellers, as to what transpired during the robbery. So it is a question there as to Viola's testimony.

"Now, we have Devlin who admits to having participated in this robbery. He didn't go into so much detail as I recall. He contradicted Viola repeatedly, called him a liar, and told you that Beedle was not with them on the day of the robbery. *So you have two conflicting statements there, one from Viola and one from Devlin. Now, which do you believe? That is going to be your problem, members of the jury. And of course I am sure you understand that I am not eliminating the question of the alibi, but as to the*

[1]. Transcript at 474–475.

*testimony of these two admitted bank
robbers in this very bank robbery, you
must determine which one gave you the
true story and which one did not, and
you must be convinced, as I say, beyond
a reasonable doubt.*

*"If you intend to acquit him you
would have to find that you have a rea-
sonable doubt that Viola's story is not
the correct one, that Beedle was not
there. In effect, you would have to
disbelieve Viola and believe Devlin.
That is aside, as I say, from the alibi
witnesses."* [2] (Emphasis added.)

Beedle's counsel took exception to por-
tions of the jury charge. He expressed
his objection to the Judge's instructions
in the following colloquy:

"[Beedle's Counsel:] The Court said
that this case will turn on credibility. I
respectfully except to that. The Govern-
ment has the duty of establishing be-
yond a reasonable doubt each and every
allegation of the case and if it fails to
do that then that is sufficient for a
judgment of acquittal.

"I respectfully except to the Court's
failure to tell the jury that if they find
that the Government has not met its
burden they have no alternative but to
return a verdict of not guilty.

"THE COURT: Very well. The ex-
ceptions will be noted. You haven't
brought anything to my attention that
requires a supplemental charge." [3]

The important question before this
court is whether the instructions in the
jury charge quoted herein contain preju-
dicial error.

The instant case is on almost all fours
with United States v. Booz, 451 F.2d
719, 722–724 (3 Cir. 1971). Its govern-
ing principle is also very similar to
Stump v. Bennett, 398 F.2d 111, 115–116
(8 Cir. 1968), cert. denied 393 U.S. 1001,
89 S.Ct. 483, 21 L.Ed.2d 466 (1968).
See United States v. Marcus, 166 F.2d
497, 503–504 (3 Cir. 1948). What is
said in *Stump* and repeated in substance
in the decisions cited *supra* is applicable

here. The Court of Appeals for the
Eighth Circuit stated at 116 of 398 F.
2d: "The instruction itself is inconsist-
ent and confusing, as is pointed out by
the federal district court below. The
jury is told that before it can acquit the
defendant by reason of this defense the
defendant must establish it by the pre-
ponderance of evidence. Yet the jury is
also told that if *any* evidence creates a
reasonable doubt as to the crime as a
whole, then it can return a verdict of
not guilty." The Court went on to state,
quoting from Glover v. United States, 8
Cir., 147 F. 426, at 431: " 'By shifting
the burden of proof to a person who
claims to have been elsewhere at the
time of the crime, there is created an ir-
rational and arbitrary presumption of
guilt. It arises not by reason of a proof
of fact from which a fair inference
might be drawn but from the mere hap-
pening that the defendant offers testi-
mony in an attempt to establish inno-
cence. When this occurs, unless the de-
fendant can succeed in overbalancing the
state's evidence, the jury is expressly
told he cannot be acquitted by reason of
his sole claim to innocence. There is
thus a prejudgment of a conclusion
which the jury should reach of its own
volition. * * * [T]his presumption
would conflict with the over-riding pre-
sumption of innocence with which the
law endows the accused and which ex-
tends to every element of the crime.
* * * [I]ncriminating presumptions
are not to be improvised by the judi-
ciary.' See Morissette v. United States,
342 U.S. 246, 275, 72 S.Ct. 240, 256, 96
L.Ed. 288 . . . (1952)."

█ It is obvious that the District
Court committed prejudicial error and
therefore reversal of its judgment must
follow.

█ The District Court also erred in
another respect. Beedle was *indicted*
under his own name and under an alias,
*Bedle.* He sought to have the alias re-
moved from the indictment and fore-
fended from use at trial. The motion

2. Transcript at 478–480.

3. Transcript at 483–484.

was neither granted nor denied, although at trial the parties agreed to strike the alias. Then in his charge to the jury the Judge made reference to the alias.[4]

In a side-bar discussion immediately after the jury charge, the prosecuting Assistant United States Attorney made the following statement: "Judge, earlier in the proceedings we agreed to strike the alias. Now, I will tell you why the alias was there. I misspelled, I didn't have the correct spelling."[5] At the prosecutor's request the Judge indicated that he would explain the misspelling to the jury, but the Judge failed to give any such explanation.

The motion to strike should have been granted, for the alias served no useful end and could only prejudice Beedle. The practice of allowing aliases to exist has been condemned where as they serve no useful purpose either to identify the accused or to protect him from double jeopardy. United States v. Grayson, 166 F.2d 863, 867 (2 Cir. 1948); United States v. Solowitz, 99 F.2d 714, 715 (7 Cir. 1938). See Lefco v. United States, 74 F.2d 66, 70 (3 Cir. 1934); D'Allessandro v. United States, 90 F.2d 640, 641 (3 Cir. 1937). See generally 87 A.L.R.2d 1217–1218.

Despite an agreement not to use the improper alias, the Judge nonetheless brought the alias to the attention of the jury. The requested explanation to the jury in these circumstances would have cured the error, but failure to give the requested explanation leaves that error uncorrected. This too was error. Cf. United States v. Monroe, 164 F.2d 471, 476–477 (2 Cir. 1947), cert. denied 333 U.S. 828, 68 S.Ct. 452, 92 L.Ed. 1113 (1948).

The other points raised by the parties do not require discussion.

The judgment of conviction will be reversed and the case remanded to the District Court for a new trial consistent with this opinion.

---

4. Transcript at 468.

5. Transcript at 481.