UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald Antonio RAGGHIANTI,
Defendant-Appellant.

No. 76–3013.

United States Court of Appeals,
Ninth Circuit.

Sept. 16, 1977.

Norman Sepenuk, Portland, Or., argued, for defendant-appellant.

Frank Noonan, Asst. U. S. Atty., Portland, Or., argued, for plaintiff-appellee.

Before MERRILL and SNEED, Circuit Judges, and BLUMENFELD,* District Judge.

BLUMENFELD, District Judge:

Under an indictment charging him with aiding and abetting in the commission of a bank robbery, 18 U.S.C. § 2113(a), appellant was convicted by a jury and received a sentence of 20 years' imprisonment. At the trial, he sought to establish an alibi defense. On appeal, the defendant contends that the court erred (a) in refusing to give a requested "alibi" instruction, and (b) in neglecting to limit certain testimony for impeachment purposes only. Although we reverse and remand because of error in the charge, in the interest of an error-free retrial we discuss the second alleged error as well.

### Facts

At approximately 3:00 p. m. on October 22, 1974, the Macadam Ave. Branch of the First National Bank of Oregon, Portland, Oregon, was entered and robbed by Richard Paul Repp.

Some 15 or 20 minutes later Repp and the defendant arrived at the Westover Towers Apartments in an auto driven by the defendant with Repp in the back seat. Repp got out of the car and then took something from the back seat. Both men entered the apartment. About 20 minutes later, the defendant came out of the apartment and began to drive away, but was shortly thereafter arrested. He had $1,280 on his per-

* Honorable M. Joseph Blumenfeld, United States District Judge of the District of Connecticut, sitting by designation.

son. In one pocket was a wad of $970, containing $80 of bait money.[1]

### The Alibi Evidence and Charge

The government's sole theory of aiding and abetting was that the defendant was waiting in a car in a parking lot not far from the bank and that he drove the getaway car. All of the evidence introduced at trial showed that the actual robbery of the bank was committed by Repp, acting alone. The bank manager followed Repp out of the bank and around a corner, saw him go up Macadam Avenue and turn into the John's Landing shopping complex before losing sight of him. A second witness observed Repp proceed alone at a fast walk near the bank to the north side of John's Landing.[2] Neither one of these witnesses saw any automobile associated with Repp. The defendant was not observed until approximately a quarter of an hour later when he was seen driving up to his apartment near the intersection of N.W. 25th Place and Lovejoy in a red, two-door sport model Fiat. At that time Repp was in the back seat.

There was testimony that Repp had arrived from Chicago that day at about noon. He was met at the airport by the defendant and a Miss Deborah Tillson. After lunch at an airport restaurant, Repp asked the defendant if he could have the use of the car for about an hour. The defendant told Repp that he could while the defendant and Miss Tillson were doing some shopping downtown. They did some errands and then went downtown. At about 2 o'clock, Ragghianti and Miss Tillson stopped at Meier and Frank, a downtown department store, and turned the car over to Repp. They told Repp to be back in an hour. After robbing the bank, Repp did return to pick up Ragghianti and Tillson who were waiting on a street corner. Repp then feigned illness so as to persuade the defend-

ant to drive him to the defendant's apartment and so that he could lie down in the back seat. According to their testimony, Repp at no time told the defendant that he intended to rob a bank, and the defendant claimed to know nothing about it.

The government contended that the defendant aided and abetted the robbery by driving Repp away from the vicinity of the crime. The testimony of the three witnesses—Ragghianti, Repp, and Tillson—clearly supported a classic alibi defense—that Ragghianti was somewhere else (shopping with Miss Tillson) when Repp robbed the bank and made his escape.

The defendant filed specific requests to charge the jury on the law relating to the alibi defense. The substance of the requested instruction as an accurate statement of the law was not challenged. The judge refused to give this charge, stating: ". . . well, I'm not sure there is an alibi yet. The defendant said he was somewhere else. It's just a question of credibility." Exception to the failure of the judge to give the requested alibi charge was properly taken.

Since it was readily admitted that Repp had robbed the bank alone, the sole contested issue on the charge of aiding and abetting was the defendant's claim of an alibi—that he was elsewhere when Repp made the getaway. In the body of the charge the court did not even mention the defendant's claim of an alibi. All that was said about the main issue was,

"Now the government does not claim that it was the defendant who robbed the bank. Rather the government claims the defendant aided and abetted the bank robber by driving a car away from the bank and sharing in the proceeds from the bank robbery. So this is the only offense with which this defendant is charged here today, aiding and abetting in a bank robbery."

1. The defendant's explanation for his possession of some of the money stolen from the bank was that part of it was in repayment for a loan to Repp, and the rest was to be used by him to purchase drugs for Repp.

2. There is an underground parking lot there in which Repp claimed to have parked the car before the robbery. He returned there after the robbery and picked the car up.

At no time did the court discuss any of the evidence as it related to the issues.

▪ The alibi instruction should have been given. The instruction requested is *in haec verba* in § 11.31 of Devitt and Blackmar, Federal Jury Practice and Instructions, 2d ed. (1970), and was approved in *United States v. DePalma*, 414 F.2d 394, 396 (9th Cir. 1969). The general rule as to the need for the alibi instruction as discussed in *United States v. Marcus*, 166 F.2d 497, 503–04 (3d Cir. 1948), is right on point. There the court stated:

> "By the weight of authority it is held that the instructions on the presumption of innocence of the accused, and of the necessity of fastening every necessary element of the crime charged upon the accused beyond a reasonable doubt, are not enough in cases involving the necessary presence of the accused at a particular time and place, when the accused produces testimony that he was elsewhere at the time. If the accused requests an instruction as to the burden of proof on his alibi, an instruction on the subject must be given so as to acquaint the jury with the law that the government's burden of proof covers the defense of alibi, as well as all other phases of the case. Proof beyond a reasonable doubt as to the alibi never shifts to the accused who offers it, and if the jury's consideration of the alibi testimony leaves in the jury's mind a reasonable doubt as to the presence of the accused, then the government has not proved the guilt of the accused beyond a reasonable doubt."

*See also United States v. Megna*, 450 F.2d 511, 513 (5th Cir. 1971); *United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir. 1976).

This error in failing to give the requested charge was compounded by the supplemental instruction the court did give. Following an off-the-record discussion with counsel at the side bar which the court invited after he had finished the charge and while the jury was otherwise ready to retire to consider their verdict, he gave these additional instructions to the jury:

> "And I think on the record that you've heard this—and the evidence that you've heard in this case, it's a question of whether you believe in the government's theory of the case that the defendant did know and participate in what was going on or the defendant's theory that he didn't know, wasn't even in the automobile at the time it went out to the bank. So it's a question of weighing the credibility of the witnesses, and there's no duty on this defendant to investigate or try to find out what was happening. If that were the case, it would be your duty to find him not guilty."

Not only was this instruction confusing, it was inconsistent with what the jury had been told before in general terms about the burden of proof being on the government. To instruct the jury that the case would turn upon whom they believed impermissibly emphasized the risk of juror misapprehension of the burden of persuasion which an alibi charge is designed to eliminate. *See United States v. Beedle*, 463 F.2d 721 (3d Cir. 1972). When an issue of this kind was elevated to last-minute consciousness it was crucial to instruct the jury on the applicable law. It has long been the rule that the court is required to give the jury a full statement of the law, and that "a neglect to give such full statement, when the jury consequently fall into error, is sufficient reason for reversal." *Bird v. United States*, 180 U.S. 356, 361, 21 S.Ct. 403, 405, 45 L.Ed. 570 (1901). The defendant's claim of an alibi was his sole defense. Here, the error is magnified since the judge was specifically requested to charge the jury on the law governing the issue.

*Impeachment Testimony*

▪ In remanding this case for a new trial for failure to give an alibi instruction, we are additionally persuaded by the fact that hearsay evidence of prior inconsistent statements of a witness was admitted without the protection of an admonition or instruction from the court to the effect that the statements could be considered only as bearing on credibility.

The government called Miss Tillson as a rebuttal witness. She testified that she had gone downtown with Repp and the defendant and that Repp drove away after he dropped her and the defendant off to go shopping in the Meier and Frank department store; that Repp alone left; and that the defendant stayed there with her. She later saw Repp again when he came by to pick up the defendant outside the building and they drove off. This testimony was out of joint with the government's theory and confirmed the defendant's alibi.

Whether in order to refresh her memory or to impeach her, the prosecutor was permitted to ask her whether she remembered making several oral statements to the F.B.I. which might have dented the defendant's alibi. Failing to elicit from her any recollection of any prior statement of that kind to the F.B.I., the next witness called by the government was an F.B.I. special agent. He testified, without objection, as to contradictory statements made to him by Miss Tillson. While Miss Tillson's direct testimony supported the alibi defense, the testimony of the agent as to statements made to him by her tenuously contradicted not only her, it also contradicted the defendant's testimony. This "was hearsay of the worst variety, incapable of being countered by direct evidence." *United States v. Cunningham*, 446 F.2d 194, 200 (2d Cir.), *cert. denied*, 404 U.S. 950, 92 S.Ct. 302, 30 L.Ed.2d 266 (1971), (Oakes, J., concurring in part, and dissenting in part). At the very least an instruction limiting its use only for impeachment was necessary to avoid its being used as substantive proof. *United*

*States v. Shoupe*, 548 F.2d 636 (6th Cir. 1977). *Cf. United States v. Sisto*, 534 F.2d 616, 623–24 (5th Cir. 1976).

Although the failure of the witness to remember certain portions of alleged statements made to special agents of the F.B.I. might be regarded as sufficient to satisfy the inconsistency requirement of Rule 801(d)(1)(A),[3] nevertheless the agent's testimony as to what she had said was hearsay. As such it was not admissible in evidence to prove the truth of the matter allegedly asserted in her prior statement. Rule 801(c).[4] Limits on the use of hearsay evidence as proof of substantive facts have now been authoritatively settled for federal courts. Had her earlier statement been "given under oath subject to the penalty of perjury at a trial" or other proceeding, it would not have been hearsay under Rule 801(d)(1)(A). But that stamp of probity was not present. While it does not necessarily follow that every one of the Federal Rules of Evidence is a "specific command of Congress" so that a violation of one requires reversal unless "harmless beyond a reasonable doubt," *Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), the value of prior cases holding admissible for substantive purposes such unsworn hearsay statements has surely been weakened by the codification of 801(d)(1)(A) into the Federal Rules of Evidence. Even before the enactment of the Federal Rules of Evidence into law, the orthodox hearsay rule rejected the use of an unsworn statement made out of court as substantive evidence in a trial. Congress has now spoken to the issue and Congress,

**3.** Rule 801(d)(1)(A), Fed.R.Evid., provides in full that a statement is not hearsay if

"the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

The trial judge did not determine that the witness' failure to remember was not genuine. *Cf. United States v. Rogers*, 549 F.2d 490 (8th Cir. 1976). She did not profess an inability to remember the actual events, but only an inability to remember that she had made earlier

statements which might conceivably modify what she asserted in her direct testimony at the trial. Nor does it appear that the judge determined on voir dire that the memo used by the impeachment witness reliably reflected the witness' prior statement. *Cf.* Rule 803(8)(B) Fed. R.Evid.; *United States v. Schoupe, supra*, 548 F.2d at 642.

**4.** Rule 801(c), Fed.R.Evid., defines "hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

not the court, has the final say. *Palermo v. United States*, 360 U.S. 343, 351, 355, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). There is, after all, a difference between a prior statement obtained from a witness by the police in the course of a criminal investigation, and testimony given under oath in a formal proceeding. There are several reasons for treating such statements differently, all of which have been the subject of learned comment which need not be harrowed here. *See generally, California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).[5] *See also*, Notes of the Advisory Committee on Proposed Rule 801, reprinted in 28 U.S. C.A. Rules of Evidence at 527–31; Reports of the Senate and House Committees on the Judiciary and the Conference Report, 4 U.S. Code Cong. & Admin.News 1974, 93d Cong. 2d Sess. at 7062–63, 7086–87, 7104; 4 *Weinstein's Evidence* 801–1–801–40, 801–71–801–98 (1975).

There is a crucial distinction between the use of a prior inconsistent statement of a witness only to impeach the credibility of the witness and its use to prove as a fact what is contained in the statement. As this court has previously stated, *Kuhn v. United States*, 24 F.2d 910, 913 (9th Cir.), *modified on other grounds on rehearing*, 26 F.2d 463, *cert. denied sub nom. Ice v. United States*, 278 U.S. 605, 49 S.Ct. 11, 73 L.Ed. 533 (1928), and as Judge Friendly for the Second Circuit has recently reiterated, *United States v. Cunningham, supra*, 446 F.2d at 197, "the maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised." It has been suggested that to point out this distinction to a jury may be fruitless since conjecture takes over. Even in the face of curative instructions, the jury may decide that what the witness says at the trial is not the truth, but that what he

said before is. Although the difference in the use of a prior statement for impeachment but not as substantive evidence may be subtle, it has been held that proper implementation of the rule requires "an explicit admonition to the jury by the court at the time a prior inconsistent statement is admitted, and also an instruction at the close of the trial, that the statement may be considered only as bearing on credibility." *Bartley v. United States*, 115 U.S.App.D.C. 316, 318, 319 F.2d 717, 719 (1963). And where in that case, as here, neither was done, the *Bartley* court[6] held it to be plain error under Rule 52(b) requiring a new trial despite the lack of objection to the admission of the prior inconsistent statement or any request by counsel for the defense thereafter to caution or instruct the jury with respect to the limited role of the statement. *See also, United States v. Lipscomb*, 425 F.2d 226, 227 (6th Cir. 1970).

These cases may not be controlling in every situation. But where the defendant's alibi, which was the sole issue in the case, had to stand or fall on the question of credibility, the failure to give a limiting instruction confirms our decision that this case must be reversed and remanded for a new trial.

SNEED, Circuit Judge (dissenting):

I respectfully dissent.

This is both a close and troublesome case. The initial difficulty is that viewed abstractly the testimony of Repp, Tillson, and appellant to the effect that the car was turned over to Repp at around two o'clock, that Repp returned to a street corner not proximate to the bank to pick up the appellant, and that Repp was then driven to the appellant's apartment is not sufficient, even if believed, to establish an alibi with respect to aiding and abetting a bank robbery. It is undisputed that less than half an hour

---

**5.** In deciding that the admissibility of a prior statement made in the course of judicial proceedings did not violate the confrontation clause the Court discussed the hearsay implications. For a discussion of *California v. Green*, see *The Supreme Court, 1969 Term*, 84 Harv.L. Rev. 32, 108–117 (1970).

**6.** This was a ruling before the adoption of the Federal Rules of Evidence in which Chief Justice Burger participated as a Circuit Judge.

after the robbery appellant and Repp were seen together in the car arriving at appellant's apartment and a few minutes later appellant was arrested as he left the apartment in possession of a large sum of cash, including the bait bills. These undisputed facts, if joined with the assumed true Repp-Tillson-appellant testimony, would not preclude a verdict of guilty of aiding and abetting. To preclude such a verdict it also would be necessary for the jury to believe, as Repp, Tillson, and appellant each also testified, that appellant knew nothing of Repp's plans and that they in no way aided and abetted the robbery. This particular Repp-Tillson-appellant testimony is not evidence of an alibi. As to it the trial court was right when it observed, "It's just a question of credibility." (R.T. 28)

This analysis would justify a refusal to give an alibi instruction because an alibi instruction is not required when the alibi is not a defense to the crime with which the defendant is charged. This court has recognized this rule in *Todorow v. United States*, 173 F.2d 439, 446 (9th Cir. 1949). It was there held that the absence from the building in which false claims were made at the time such claims were made did not entitle the defendant to an alibi instruction when the crime charged included knowingly causing another to make false claims in violation of 18 U.S.C. § 1001. *See United States v. Beck*, 431 F.2d 536, 538 (5th Cir. 1970); *Tomlinson v. United States*, 68 U.S. App.D.C. 106, 109, 93 F.2d 652, 655–56, *cert. denied* 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1107 (1937).

I would rest my dissent on this reasoning and the cited authorities were it not for the fact that, after a careful study of the record and reporter's transcript of the trial, I conclude the Government exclusively rested its case on the theory that the appellant was within the vicinity of the bank and drove the getaway car. This invokes the teaching of *United States v. Burse*, 531 F.2d 1151 (2d Cir. 1976), upon which the majority relies. In *Burse*, although the defendant was charged with both bank robbery, which would require his presence at the bank during the robbery, and conspiracy to rob the

bank, which would not require such presence, the Government's case rested heavily on establishing the defendant's presence at the bank at the time of the robbery. The defendant introduced evidence which tended to show him to be elsewhere at the time of the robbery. Under these circumstances an alibi instruction was held to be necessary notwithstanding the fact that the defendant was convicted only of conspiracy.

I would accept the teaching of *Burse*, with which in general I have no quarrel, as applied to the facts of this case were I convinced the alibi evidence here was strong and that the failure to give an alibi instruction in any way prejudiced the appellant. I am not so convinced.

There is authority which supports the proposition that when the alibi evidence is not strong, a failure to give an alibi instruction is not error if the jury is instructed that the Government must establish the elements of the crime beyond a reasonable doubt. *United States v. Erlenbaugh*, 452 F.2d 967 (7th Cir. 1971), *cert. granted* 405 U.S. 973, 92 S.Ct. 1194, 31 L.Ed.2d 247, *affirmed* 409 U.S. 239, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972). In my view this case, although not free from doubt, should be controlled by that authority.

There is no question but that the trial judge specifically required that the Government prove its case beyond a reasonable doubt. The relevant portion of the charge was as follows:

"The law presumes the defendant to be innocent of crime. Thus, the defendant, though accused, begins the trial with a clean slate, with no evidence against him. The law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant unless you, the jurors, are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all of the evidence in the case.

"It is not required that the Government prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitant to act. Proof beyond a reasonable doubt must therefore be proof of such a convincing character that you would be willing to rely and act upon unhesitatingly in the most important of your own affairs.

"I've already told you that you must not ever convict anyone on mere suspicion or conjecture. The evidence must be that which satisfies each of you beyond a reasonable doubt.

"The burden is always on the prosecution to prove the case. This burden never shifts to the defendant, for the law never imposes upon a defendant in a criminal case the burden of proving or the burden of calling any witness or producting [sic] any evidence.

"A reasonable doubt exists when, after careful and impartial consideration of all the evidence in the case, the jurors are not convinced to a moral certainty that the defendant is guilty of the charge. So if the jury views the evidence in the case as reasonably permitting either of the two conclusions, one of innocence, the other of guilt, the jury should, of course, adopt a conclusion of innocence." (R.T. 187–88)

The requested alibi instruction, which is set forth in the margin,[1] was misleading in that it could have been understood to have justified an acquittal had the Government not established that the appellant and Repp together robbed the bank. This, of course, was not the Government's theory. In addition, the substance of the last two paragraphs of the requested charge is contained in the instructions which were given and are set out above.

Neither of these considerations would justify failure to give a proper alibi instruction under *Burse* had appellant's evidence been stronger. What is lacking is unimpeached testimony of one not a participant in, or charged with, the robbery which tends to support the alibi. Tillson's testimony was impeached, and, had an instruction been given limiting the probative weight of hearsay evidence of prior inconsistent statements to impeachment, the strength of her testimony would not have been increased. In a situation in which the alibi evidence is no stronger than here I would permit the trial judge in his discretion to avoid a possibly confusing alibi instruction provided he clearly and unequivocally placed upon the Government the burden of proving the elements of the crime beyond a reasonable doubt. The purpose of the alibi instruction in the final analysis is to place upon the Government the burden of proving beyond a reasonable doubt not only that the defendant could have committed the crime but also that he did so. This purpose was adequately served in this case. To reverse convictions because of formal defects in trial procedure not affecting the defendants' rights serves well neither justice, the courts, nor the people.

My disposition of the appellant's contentions regarding the failure to given an instruction limiting the hearsay evidence of prior inconsistent statements to impeachment is quite simple. The failure of a trial court to give such an instruction *sua sponte* does not in this circuit constitute "plain error." *See Isaac v. United States*, 431 F.2d 11, 15 (9th Cir. 1970). Nor do I believe that an exception should be made in this case.

I, therefore, respectfully dissent.

1. "Evidence has been introduced tending to establish an alibi, which amounts to a contention that the defendant was not present at the time when or at the place where he is alleged to have committed the offense charged in the indictment.

"If, after consideration of all the evidence in the case, you have a reasonable doubt as to whether the defendant was present at the time and place the alleged offense was committed, you must acquit him.

"The jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence." (C.R. 38)