981 F.2d 1259
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Daniel Lucien TURNER, Defendant-Appellant.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
Martin M. VILORIA, Defendant-Appellant.
The PEOPLE OF the TERRITORY OF GUAM, Plaintiff-Appellee,
v.
John Gokita MANIBUSAN, Defendant-Appellant.
 Nos. 91-10612, 91-10624 and 92-10002.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 3, 1992.
Decided Dec. 16, 1992.
 
 Before JAMES R. BROWNING, WILLIAM A. NORRIS and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daniel Turner, Martin Viloria and John Manibusan were indicted for aggravated murder, burglary, robbery, and possession and use of a deadly weapon in the commission of a felony. Their first trial ended in a mistrial because the jury was unable to reach a verdict. On retrial, Turner, Viloria and Manibusan were convicted on all counts. The District Court of Guam, Appellate Division, affirmed the convictions, finding the trial court's errors harmless. We conclude the erroneous instruction regarding reasonable doubt was not harmless and address some of appellants other claims to provide guidance on retrial.
 
 1. Reasonable Doubt
 
 3
 The trial court plainly erred by instructing the jury that defense counsel's statement in closing argument as to the meaning of reasonable doubt was not an accurate statement of law. Defense counsel told the jury that if the evidence reasonably permitted either a conclusion of guilt or a conclusion of innocence the jury must find for the defendants. The argument reflected the "two inference instruction," which, although criticized, see, e.g., 1A Sand, Siffert, Loughlin & Reiss, Modern Federal Jury Instructions p 4.01 at 4-15 (1992), is a correct statement of Ninth Circuit law. United States v. James, 576 F.2d 223, 227 n. 3 (9th Cir.1978). The only question is whether the court's error was harmless.[1]
 
 
 4
 The importance of an accurate instruction on reasonable doubt, and the presence of circumstances aggravating the error in this case, compel the conclusion that "there is a reasonable possibility that the error materially affected the verdict." United States v. Valle-Valdez, 554 F.2d 911, 915 (9th Cir.1977) (emphasis in original). See also United States v. Rubio-Villareal, 967 F.2d 294, 296 n. 3 (9th Cir.1992). The prosecution's evidence was strong but not so decisive as to alter this conclusion.[2]
 
 
 5
 We have said "a conviction should not rest on ambiguous and equivocal jury instructions on a basic issue." United States v. Washington, 819 F.2d 221, 226 (9th Cir.1987). No issue is more basic than whether guilt has been proven beyond a reasonable doubt. The reasonable doubt standard "is indispensable to command the respect and confidence of the community in applications of the criminal law." In re Winship, 397 U.S. 358, 364 (1970). Accordingly, we have said a reasonable-doubt charge must "fairly and accurately convey the meaning of a reasonable doubt." United States v. Wosepka, 757 F.2d 1006, 1008 (9th Cir.1985). The charge in this case, taken as a whole, did not "fairly and accurately convey the meaning of a reasonable doubt." Rather, it suggested to the jury that if torn between two equally reasonable hypotheses it could still convict.
 
 
 6
 The effect of the court's error was aggravated by other circumstances. Because the error was made during summations, the erroneous instruction was the court's last statement to the jury regarding reasonable doubt. Moreover, the prosecutor reinforced the error by repeating it in his rebuttal summation, and by erroneously advising the jury that defendant's accurate statement of law applied only to circumstantial evidence and was inapplicable to this case because the prosecution had produced direct evidence of guilt.[3]
 
 2. Hostile Witness
 
 7
 The trial court's ruling that the prosecution's witness, John Manibusan, was a hostile witness and that the prosecutor therefore could use leading questions in his examination, fell within the court's broad discretion under Guam Rule of Evidence 611(c). 6 Guam Code.Ann. § 611(c) (1987). See also Miller v. Fairchild Indus., Inc., 876 F.2d 718, 734 (9th Cir.1989) (quoting McCormick on Evidence at 12 (1984)). John Manibusan was plainly a hostile witness. He had testified for the prosecution in the first trial, but completely renounced his previous testimony soon after taking the stand in the present trial. (Tr. Vol. I at 81).
 
 
 8
 3. Impeachment with Prior Inconsistent Statements
 
 
 9
 We respectfully disagree with the conclusion of the Appellate Division that no error occurred in the prosecutor's use of prior inconsistent statements made by John Manibusan to Paul Suba and Claudia Manibusan to impeach John Manibusan's trial testimony.
 
 
 10
 Because the prior statements were admissible only for impeachment and not as substantive evidence, 6 Guam Code Ann. §§ 613(b), 801(d)(1)(A), the trial court should have advised the jury "at the time the prior inconsistent statement[s] [were] admitted" and again at the end of trial, that "the statement[s] may be considered only as bearing on credibility." United States v. Ragghianti, 560 F.2d 1376, 1381 (9th Cir.1977) (quoting Bartley v. United States, 319 F.2d 717, 719 (D.C.Cir.1963). No instruction was given when Claudia Manibusan and Officer Suba testified as to the prior statements by John Manibusan, and although the trial court gave a general instruction at the end of trial that prior inconsistent statements were to be considered solely to determine a witness' credibility, the instruction did not direct the jury's attention to the testimony regarding John Manibusan's statements. (Tr. Vol. X at 32).
 
 
 11
 Furthermore, if these statements are offered on retrial, the court should consider whether the prosecution is impeaching his own witness' testimony as a " 'subterfuge' to get otherwise inadmissible testimony before the jury." United States v. Crouch, 731 F.2d 621, 624 (9th Cir.1984). When a party impeaches its own witness, " 'the maximum legitimate effect of the impeaching testimony can never be more than the cancellation of the adverse answer by which the party is surprised." Ragghianti, 560 F.2d at 1381 (quoting United States v. Cunningham, 446 F.2d 194, 197 (2d Cir.1971) (Friendly, J.)). It may be that Manibusan's testimony had already been "cancelled out" by the admission of his testimony at the first trial as substantive evidence, and the only purpose of proving his statements to Suba and Mrs. Manibusan was to corroborate his prior testimony that had already been admitted. The prosecution may demonstrate on retrial, however, that this testimony has additional impeachment value.
 
 4. Expert Witness
 
 12
 The trial court's refusal to permit an attorney to testify as an expert witness to refute Nahalowaa's claim that he had not made any deals in exchange for his testimony was within the trial court's "broad discretion ... to conclude that, on balance, the jury would not benefit from the admission of the proffered evidence." United States v. Langford, 802 F.2d 1176, 1179 (9th Cir.1986); 6 Guam Code Ann. § 702 (expert testimony admissible if it will "assist the trier of fact"). The jury had sufficient evidence of Nahalowaa's motivation to curry favor with the government. Nahalowaa testified he believed he was an accessory to murder and was afraid he might be charged with that crime. (Tr. Vol. VII at 41). The expert testimony would have been cumulative and of little additional assistance to the jury.
 
 5. False Statements to the Jury
 
 13
 Appellant Viloria argues the prosecutor lied to the jury by stating that Viloria had failed to raise his alibi defense prior to trial.
 
 
 14
 The alibi rested on defendant Martin Viloria's testimony that he was home with his wife on the night of the murder, (Tr. Vol. IX at 34-58), and Mrs. Viloria's testimony that Martin was with her all night and did not awake until the next morning when she asked him to kill a snake on her kitchen windowsill. Mrs. Viloria testified she remembered the night clearly because she and Martin had been invited to a barbecue with the other defendants, and had an argument when he refused to go. (Tr. Vol. IX at 17-21).
 
 
 15
 As the Appellate Division said, if the prosecutor's statement that appellant Viloria had not raised this defense at the first trial was false, it was "false only in a hypertechnical sense." Slip op. at 16. Although Viloria filed a notice of alibi defense prior to the first trial, he did not raise the alibi defense in that trial, and neither he nor his wife testified. Moreover, the thrust of the prosecutor's statement was that the Vilorias had told the story about their argument over the barbecue and the snake incident for the first time at the second trial, and this statement by the prosecutor was true.
 
 
 16
 6. Prosecutor's Comment on Viloria's Post-Arrest Silence
 
 
 17
 We respectfully disagree with the Appellate Division's conclusion that no error occurred in connection with the prosecutor's comments on Viloria's failure to raise his alibi defense when he was arrested.
 
 
 18
 A prosecutor may not comment on a defendant's post-arrest silence when that silence follows Miranda warnings. Doyle v. Ohio, 426 U.S. 610 (1976); United States v. Newman, 943 F.2d 1155 (9th Cir.1991). In such circumstances the arrestee's silence is ambiguous because, "in the wake of these warnings, [it] may be nothing more than the arrestee's exercise of these Miranda rights." Doyle, 426 U.S. at 617. The Appellate Division found no error on the ground Viloria had waived his Miranda rights by speaking to the police. (Viloria's ER exhibit E at 17).
 
 
 19
 All Viloria said to the police was that he would cooperate if the police would tell him who had snitched on him. The police advised him they would make no deals, and Viloria then refused to answer any questions. While a defendant waives his Miranda rights by voluntarily speaking to the police after warnings have been given, he may revoke that waiver simply by "indicat[ing] in some manner that he wishes to remain silent." United States v. Lorenzo, 570 F.2d 294, 298 n. 1 (9th Cir.1978). This case is indistinguishable from United States v. Branson, 756 F.2d 752 (9th Cir.1985), in which we found a Doyle violation even though the defendant answered some of the officer's questions at the time of his arrest.
 
 
 20
 7. Prosecutor's Comments on Mrs. Viloria's Silence
 
 
 21
 Viloria argues that the prosecutor's closing argument included an improper comment on his wife's failure to come forward with her story at the time of his arrest and on her failure to testify in the first trial.[4]
 
 
 22
 The Appellate Division held the prosecutor's comment on Mrs. Viloria's silence at the time of her husband's arrest was improper because the prosecutor suggested that, if she had advised the police that her husband was with her at the time of murder, he would have been immediately released from prison, and the prosecutor must have known his statement to be false. We agree. Cf. People v. Lindsey, 205 Cal.App.3d 112, 117 (1988).[5] However, the prosecutor's comment on Mrs. Viloria's failure to testify in the first trial was not improper. A prosecutor may comment on the defendant's failure to call witnesses. United States v. Reyes, 966 F.2d 508, 509 (9th Cir.1992); United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1989).
 
 Conclusion
 
 23
 Because the trial court's erroneous statement regarding reasonable doubt was not harmless error, the convictions are vacated and the case is remanded for trial.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or for the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We reject the State's contention that this claim was not properly preserved for appellate review. Appellants did not make a record of the counsel's exact statement as written on a courtroom blackboard, but the substance of counsel's statement was repeated to the jury and recorded in the trial transcript
 
 
 [2]
 The primary witnesses were cooperating accomplices who had an interest in currying favor with the government. As noted above, the first trial ended with a hung jury. United States v. Schuler, 813 F.2d 978, 982 (9th Cir.1987) (prior hung jury is a factor in determining whether error is harmless beyond a reasonable doubt)
 
 
 [3]
 In finding the error harmless, the District Court, Appellate Division stated that defense counsel precipitated the error by using an instruction that had not been approved by the court. The prosecutor was equally at fault for exacerbating the trial judge's mistake
 
 
 [4]
 The prosecutor's statement was as follows:
 Then we have, also, his wife. As of last week, she didn't seem to have a clue of why she was outside in the hallway waiting to come in. As of March, the only thing she knew was that Martin was home every night, every night. You notice how Martin kind of switched on that?
 We then have, back in March, none of this story. None of this story. Would a woman leave her husband ... in for so long? Yesterday was the first time we heard that. She sat through the whole first trial, listening to all the evidence, as well as Martin. Yesterday is then when we hear it. Would a woman leave the father of her children? The man she's married to, sit in jail and wait until this long, more than a year later, and come forth and say, "Oh yeah. Oh, yeah, this is the story. It wasn't the story in March. It wasn't the story last week, but this is the story." I submit to you that may raise doubt, but, that is not reasonable doubt.
 
 
 [5]
 The court held in Lindsey that a similar argument was also an improper comment on the defendant's post-arrest silence. We express no opinion on that issue. We merely hold that the prosecutor engaged in prosecutorial misconduct because the implication of his argument was patently untrue