UNITED STATES of America, Plaintiff/Appellee,

v.

Harold T. WOSEPKA, Defendant/Appellant.

No. 83–3117.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1985.

Decided April 9, 1985.

---

Robert Westinghouse, Harry McCarthy, Asst. U.S. Attys., Seattle, Wash., for plaintiff-appellee.

Mark O. Heaney, Los Angeles, Cal., for defendant-appellant.

Before FARRIS, ALARCON and FERGUSON, Circuit Judges.

FERGUSON, Circuit Judge:

The defendant, Harold T. Wosepka, contends that his convictions for mail and wire fraud, 18 U.S.C. §§ 1341, 1343, false statements, 18 U.S.C. § 1001, and misapplying the funds of a small business investment company, 18 U.S.C. § 657, should be reversed because, inter alia, the reasonable doubt instruction given by the district court was inadequate. Given the circumstances of this case, we agree and reverse.

## I.

The charges upon which Wosepka was convicted arose out of Wosepka's participation in a loan program operated by the Small Business Administration ("SBA") pursuant to the Small Business Investment Act of 1958 (the "Act"). 15 U.S.C. §§ 681–687.

Under the Act, the SBA is authorized to license privately owned investment companies with sufficient capital from private funds as Small Business Investment Companies ("SBIC"s). The purpose of an SBIC is to provide equity capital, long-term loans and management assistance to small business concerns. When adequately capitalized by private funds, an SBIC may gain access to SBA funds in amounts equal to up to four times the private capital of the SBIC. These SBA funds, known as "leverage funds," are provided in the form of a loan, typically for a ten year period, at interest rates determined by the Treasury Department's cost of funds. Although it is independent and privately owned, an SBIC is subject to reporting requirements and annual examinations by the SBA. In short, an SBIC is a federally regulated investment company which lends the government's money as well as its own to small business concerns.

In 1978, Wosepka purchased all the stock of an SBIC named the Small Business Investment Company of America (the "Company"). After acquiring the Company, Wosepka sought the approval of the SBA for the transfer of ownership and control. Because the Company had been inactive for some time, the SBA required a fresh injection of private capital as a condition of any transfer of ownership.

In order to satisfy the SBA's requirement, Wosepka made a $268,719 deposit to the Company's account. This deposit was made possible by a complicated series of transactions which the government terms a "check kite"—a circular flow of nonsufficient funds checks culminating in an illusory deposit—and which Wosepka terms a valid series of close business transactions with real cash injected from a line of credit.

Wosepka then, on March 23, 1979, sent a letter to the SBA representing that a capital increase had been made and enclosing a balance sheet for the Company and a bank verification letter confirming that an unencumbered cash deposit of $268,719 had been made to the Company's account. Because of the private cash increase to the capital base of the Company, the SBA approved the license transfer to Wosepka and the Company also qualified for SBA leverage funding.

The Company, with its name changed to Trans-Am Bancorp, Inc. ("Trans-Am"), applied for leverage funds on March 27, 1979 ($500,000), August 9, 1979 ($450,000), August 30, 1979 ($500,000), and October 31, 1979 ($500,000). All applications were approved and funds totalling $1.95 million were wired by the SBA in four increments to Trans-Am's bank account in Oregon. The government claims that Wosepka then set up various loans to small businesses which resulted in most of the monies being routed back to corporations controlled by Wosepka or to his own private use.

Based upon these alleged transactions, a federal grand jury returned a thirty-two count indictment against Wosepka. Counts I through V each charged Wosepka with a separate mailing in execution of a scheme and artifice to defraud the SBA in violation of 18 U.S.C. § 1341 & § 2. (These included Wosepka's letter to the SBA of March 23, 1979 and its enclosed balance sheet and bank's verification letter (Count I) and the four form applications submitted to the SBA by Wosepka for leverage funds (Counts II through V)). Counts VI through IX charged Wosepka with causing four separate wirings of funds from the SBA totaling $1.95 million in violation of 18 U.S.C. § 1343 & § 2. Count X charged Wosepka with making a material false statement to the SBA in violation of 18 U.S.C. § 1001 when he represented that an increase in the private capital of the Company had been made by him. Counts XI through XXVIII charged Wosepka with misapplying the funds of Trans-Am in violation of 18 U.S.C. § 657 by making a series of sham loans which resulted in the return of a substantial portion of the funds to Wosepka and his designees. Counts XXIX through XXXII were dismissed by the district court on the government's motion after Wosepka's motion for their severance had been granted.

Wosepka pled not guilty to all counts of the indictment. During the course of a twelve-day trial, the government called thirty-eight witnesses and introduced approximately five hundred exhibits. Both Wosepka and the government submitted proposed "reasonable-doubt" instructions to the district court. The court declined to use either instruction and, over Wosepka's objection, gave no definition of reasonable doubt other than stating:

> Reasonable doubt, as the name implies, is a doubt based on reason and common sense.

The jury then returned guilty verdicts on all counts.

## II.

Wosepka contends that, under the circumstances of this case, the district court's abbreviated reasonable-doubt instruction did not provide the jury with a sufficient basis to determine guilt or innocence and thus constitutes reversible error. Due to the complexity of the case and the conflicting evidence, we agree.

"[A] society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." *In re Winship*, 397 U.S. 358, 363–64, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970). The reasonable-doubt standard is thus indispensable in our American scheme of criminal procedure. *Id.* at 364, 90 S.Ct. at 1072. It reduces "the risk of convictions resting on factual error" and "provides concrete substance for the presumption of innocence" which " 'lies at the foundation of the administration of our criminal law.' " *Id.* at 363, 90 S.Ct. at 1072 (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S.Ct. 394, 402, 39 L.Ed. 481 (1895)). Thus, if in reviewing the district court's reasonable-doubt charge we find that the charge taken as a whole does not fairly and accurately convey the meaning of a reasonable doubt, we must reverse. *See Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954); *United States v. Newport*, 747 F.2d 1307, 1308 (9th Cir.1984).

The skeletal instruction on reasonable doubt given by the court in this case did not fairly or accurately convey the meaning of a reasonable doubt. Although the court

noted the government's burden to prove guilt beyond a reasonable doubt several times during the instructions, it failed to provide any meaningful explanation of the reasonable-doubt concept. The instructions submitted by both the government and Wosepka gave fuller treatments to the concept of reasonable doubt than that given by the court. The government's requested instruction explained, among other matters, that reasonable doubt is such a doubt as "would cause a reasonable person to hesitate or pause in the graver or more important transactions of life" and "is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he cannot say that he has an abiding conviction of the defendant's guilt." Wosepka's proposed instruction explained that reasonable doubt is "the kind of doubt that would make a reasonable person hesitate to act" and that proof beyond a reasonable doubt must "be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs."

■ The court, however, rejected both these instructions and gave its own shortened version. The court merely stated that reasonable doubt "is a doubt based on reason and common sense." The court, for no apparent reason, deleted critical language defining reasonable doubt in terms of a "hesitation to act" and requiring the jurors to decide the question of guilt or innocence with the same degree of care and attention they would bring to bear "in the most important of their own personal affairs." Given the complexity of this case, the court's abbreviated instruction failed to provide the jury with any meaningful principles or standards to guide it in evaluating the sufficiency of the government's evidence.

We do not find *United States v. Witt*, 648 F.2d 608 (9th Cir.1981), to the contrary. In *Witt*, the district court's failure to define reasonable doubt was upheld. *Witt*, however, does not authorize the elimination of explanatory reasonable-doubt instruc-

tions in all cases. The issues to be resolved by the jury in that case were fairly straightforward and the evidence was not complex. *See* 648 F.2d at 611. The *Witt* court clearly recognized this and limited its holding to the unique circumstances in that case. *See* 648 F.2d at 610–11 ("We hold that *in this case* the district court was not required to define reasonable doubt" and that a complete instruction as to the presumption of innocence was not required *"under the circumstances of this case."*) (emphasis added).

In contrast, the issues raised and the evidence presented in the present case concern disputed transactions. Such transactions, compounded by the vast amount of evidence presented, made it difficult to determine whether the requisite elements could be found beyond a reasonable doubt with respect to each offense. Indeed, the government called thirty-eight witnesses and introduced approximately five hundred exhibits during the twelve-day trial. The testimony of the FBI agent called by the government as a summary witness at the conclusion of its case-in-chief alone fills one hundred and forty-seven pages of trial transcript.

■ Furthermore, the inadequacy of the reasonable doubt instruction is clearly demonstrated by the jury's conviction of Wosepka on Counts II through V of the mail fraud counts. To establish an offense of mail fraud under 18 U.S.C. § 1341, in addition to a scheme to defraud, the government must prove beyond a reasonable doubt that Wosepka caused a use of the United States mails to execute the scheme. *United States v. Beecroft*, 608 F.2d 753, 757 (9th Cir.1979). With respect to the four applications for leverage funds submitted by Trans-Am to the SBA (which constitute the mailings charged in Counts II through V), the government presented no evidence of the use of the mails other than: (1) the conclusory "yes" of the SBA representative who processed the applications four years prior to trial in response to the prosecutor's questions of whether he had received the applications through the

**1010**

mail; and (2) certain exhibits (two of which are applications for leverage funds which are the subjects of Counts IV and V) bearing SBA date and mail room stamps. The defendant introduced into evidence the cover letter accompanying the application that constitutes the mailing charged in Count II expressly stating that such application was delivered "via Federal Express." No evidence was presented by the government to show that Federal Express deliveries were not received and stamped in the SBA mail room. Because a use of Federal Express would not constitute a use of the United States mails, under these circumstances, given a proper reasonable-doubt instruction, a reasonable juror could have had a reasonable doubt with respect to the use of the mails. *United States v. Clevenger*, 733 F.2d 1356, 1358 (9th Cir.1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). *Cf. United States v. Stull*, 521 F.2d 687, 690 (6th Cir.1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976) (testimony of print shop owner that he received defendant's work orders through the mail four years prior to trial constituted "no more than a conclusion" and was insufficient to sustain conviction in light of other evidence presented). Considering Wosepka's evidence and the government's scarcity of proof, a fuller description of reasonable doubt was clearly necessary to guide the jury in its determination of whether the necessary elements for conviction were present.

### III.

Given the circumstances of this case, the district court did not give a sufficient instruction on reasonable doubt. Even the government submitted a proposed reasonable doubt instruction much fuller and more detailed than that given by the court. The court's abbreviated instruction did not provide the guidance the jury needed in this complicated case.

"It was the duty of the court to safeguard the [defendant's] rights, a duty only it could have performed reliably." *Taylor v. Kentucky*, 436 U.S. 478, 489, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978). The skeletal reasonable-doubt instruction given by the district court was not sufficient to protect the defendant from erroneous conviction. *See In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970).

We therefore REVERSE and REMAND for retrial.