UNITED STATES of America, Plaintiff,

v.

Constance Camellia SMITH, Charles Frederick Smith, and Benjamin Charles Smith, Defendants.

CR No. 87–60049.

United States District Court, D. Oregon.

May 4, 1988.

Charles H. Turner, U.S. Atty., Thomas M. Coffin, Asst. U.S. Atty., Portland, Or., for plaintiff.

James C. Jagger, Jagger & Holland, Eugene, Or., for defendant Constance Camellia Smith.

Richard L. Fredericks, Oakridge, Or., for defendant Charles Frederick Smith.

Shaun S. McCrea, McCrea, P.C., Eugene, Or., for Benjamin Charles Smith.

### OPINION

MARSH, District Judge.

Constance Camellia Smith, Charles Frederick Smith and Benjamin Charles Smith were charged in a five count indictment. All three defendants waived their rights to a jury trial. Thereupon, a court trial was held April 12 and 13, 1988 in Eugene, Oregon. Pursuant to the request of Benjamin Smith and in accordance with Fed.R. Crim.P. 23(c) this opinion constitutes my

special findings of fact and conclusions of law. As Constance and Charles joined the request for findings and conclusions at trial, I make special findings of fact as to them also.

In Count 1, Constance, Charles and Benjamin are charged with conspiracy involving false identification documents and making false statements to a federal agency. In Count 2, Constance, Charles and Benjamin are charged with producing, possessing with intent to use five or more, possessing false identification documents with intent to defraud the United States and possessing document-making implements with intent to produce a false identification document. In Count 3, Benjamin and Constance are charged with possession of a sawed-off rifle. In Count 4, Benjamin Smith is charged with being an ex-felon in possession of firearms. In Count 5, Constance and Charles are charged with harboring Benjamin after his escape from a federal penal institution.

## FINDINGS OF FACT

Benjamin was convicted in United States District Court for the Northern District of Alabama of fraudulent use of an airman's certificate, displaying misleading aircraft marks, importing marijuana, possessing a controlled substance not part of the cargo manifest and possessing marijuana with intent to distribute. On March 31, 1981 he received a ten year prison sentence. On September 24, 1982 Benjamin escaped.

Woodrow Brown identified Benjamin and testified that he met Benjamin in Alabama in 1983. Benjamin was dropped off at their first meeting by a woman Mr. Brown identified as Constance. At this meeting they discussed buying drugs in Mexico and flying to Mexico. Mr. Brown testified that he later met Benjamin in Arizona and gave him a large sum of money to buy an airplane to smuggle marijuana into the United States from Mexico. Although they agreed to an ongoing operation, Mr. Brown testified that Benjamin and the airplane disappeared after one load was brought in.

In October, 1983 Constance left Georgia. Mrs. Grizzard testified that she was a friend of Constance and handled some tax matters for Constance after she left Georgia. As Constance left without leaving a forwarding address, Mrs. Grizzard would telephone Constance's sister, leave a message and a few days later receive a phone call from Constance from a phone booth followed by cash in the mail. Mrs. Grizzard used the cash to pay real property taxes for Constance.

In late 1983 Benjamin Smith purchased a residence at 624 Mitchell Street, Klamath Falls, Oregon, with cashiers' checks for $20,276.51. This residence was registered to "L. W. Chester." The spouse, for tax records, was listed as "Connie."

Between June and October, 1984 Sergeant Roger Kennard, formerly with the Boulder City, Nevada, police department made a traffic stop of Constance. Sergeant Kennard testified that he advised Constance that Benjamin had escaped and inquired of his whereabouts. Constance testified that she denied knowing of Benjamin's whereabouts and at that time was not advised that he had escaped. Further, she testified that she was not the driver but was a passenger in the automobile.

On August 7, 1984 transfer registration of an automobile was made from Monica Smith, a daughter of Constance, to "Mary Kay Adams."

On September 23, 1985 "L.W. Chester" transferred the residence at 624 Mitchell to "Shauna Hills."

Receipts seized during the search of 624 Mitchell Street indicated that the name "Mary Kay Adams" was used to lease a mail drop in Springfield, Oregon on July 20, 1984. Further, a receipt in the name of "Laura Judge" dated August 16, 1985 for the lease of a mail drop was found in the residence.

On October 24, 1987 Benjamin and Charles were arrested by the United States marshalls at a truck stop in Klamath Falls. At the time of his arrest Benjamin claimed to be Sam Blakely and Charles claimed to be Barrymore Rockefeller III. Benjamin was carrying a New Mexico driver's license, a Florida driver's license, a South Carolina birth certificate, a Federal Aviation Administration (hereinafter "FAA") pilot's certificate and miscellaneous other

documents all in the name of Sam Blakely. At the time of his arrest, Charles was carrying two Washington drivers' licenses, five FAA pilots' certificates, a Rhode Island birth certificate and Mexican visa all in the name of Barrymore Rockefeller III.

Benjamin and Charles were arrested driving a Mercury Zephyr. A New Mexico driver's license, bearing a photograph resembling Charles, an FAA pilot's license and a vehicle registration in the name of Richard Alex Meyers were seized during the search of the Zephyr.

Shortly afterwards Constance was arrested nearby. She initially identified herself as "Shauna Hills." A vehicle registration document in the name of "Laura Judge," a New Mexico driver's license in the name of "Shauna Judge," a Utah birth certificate in the name of "Shauna Hills" and a blank Social Security card were seized from her and from the Volkswagon automobile she was driving.

On the same day a search warrant was executed at 624 Mitchell Street. A shotgun, sawed-off rifle and a 9 mm pistol were seized from the downstairs master bedroom. The shotgun was found up against the pedestal next to the bed. The sawed-off rifle was found on the shelf in a small closet also containing a lower leg prosthetic device. The pistol was found in a nightstand.

In addition, blank birth certificate forms, blank Social Security cards and blank FAA airman certificate and student pilot forms were seized. Birth certificates from Idaho, Rhode Island, South Carolina and Utah were seized as were drivers' licenses from New Jersey, Florida, Texas and Canada. The names on the birth certificates and drivers' licenses located in the master bedroom and kitchen were L. W. Chester, Samuel Blake, L. W. Chestnut, Robert Burke, James Price, Charles Court, Gerald Olsen, Barrymore Rockefeller III, Eric Charles Crouter and Todd Baker.[1] The names on the birth certificates and drivers' licenses

located in the upstairs area of the residence were William Crane, George Pasqual, Mary Kay Adams, Charles Smith, Benjamin Smith and Constance Smith. Receipts, traffic citations and utility bills were seized bearing the names Shauna Hills, Shauna Judge, Mary Kay Adams, Laurie Judge, Connie Chester, Rae Ann Judge and Alex Meyers. FAA airman certificates and student pilot certificates were seized bearing the names George Pasqual, Robert Blake, Pasqual Cabral and Barrymore Rockefeller. Notebooks containing background information on Shauna Hills, Shauna Judge and Mary Kay Adams and instructions regarding obtaining identification and death records were seized.

Charles Court testified that he lost his wallet and identification cards in September, 1987. Further he testified that he did not know any of the defendants nor give them permission to use his identification cards.

Jack Savage, Alabama Chief Probation Officer, identified Benjamin and Constance and testified that he was present when Benjamin was convicted in 1981. Further, he testified that Constance was present at a bond hearing subsequent to his conviction.

Jerry Tate, Special Agent of the United States Treasury, Bureau of Alcohol, Tobacco and Firearms, testified that the sawed-off rifle was not registered to Benjamin or Constance as required under federal law. Further he testified that the sawed-off rifle, shotgun and pistol were not manufactured in the state of Oregon.

James Kuykendahl, Federal Aviation Administration safety inspector testified as to an investigation of Barrymore Rockefeller regarding a review of his license and flight logs. He testified as to his attempts to locate Mr. Rockefeller, an appeal of a revocation of Mr. Rockefeller's pilot's license and the inability of their agency to work with false identification information.

---

**1.** The government alleges that Benjamin used the names L.W. Chester, Leo W. Chestnut, Sam Blake, Todd Baker, James Price, Gerald Olson, William Crane, Pasqual Cabral, Robert Burke and Leo Baker. The government alleges that Charles used the names Barrymore Rockefeller III, Charles Vincent Court III and Richard Alex Meyers. The government alleges that Constance used the names Shauna Hills, Laura Judge and Shauna Judge and used Mary Kay Adams for her daughter.

In addition, testimony was reviewed from representatives of the Oregon State Police, a Special Agent of the Internal Revenue Service Criminal Division, employees of the First Interstate Bank, Sadona, Arizona, two Deputy Marshalls, a representative of the Kentucky Bureau of Prisons, an agent of the United States Customs Service, two agents of the Drug Enforcement Agency, and a Lane County Deputy District Attorney.

BURDEN OF PROOF

The government must establish the defendant's guilt by proving the facts beyond a reasonable doubt. *United States v. Wosepka*, 757 F.2d 1006, *modified*, 787 F.2d 1294 (9th Cir.1985). A reasonable doubt is a doubt based on reason and common sense. *Id.* This means that the court must find a defendant not guilty if after considering all the evidence presented at trial it has a doubt based on reason and common sense that the government has proved the defendant's guilt. *Id.* The court may not convict on the basis of mere suspicion. *Id.*

DISCUSSION

*Count 1*

In Count 1 Constance, Benjamin and Charles are charged with knowingly and intentionally conspiring to (1) produce, possess and use false identification documents in or affecting interstate commerce and (2) making false, fictitious and fraudulent statements as to material matters within the jurisdiction of the FAA in violation of 18 U.S.C. §§ 371, 1001 and 1028.

■ 18 U.S.C. § 371 (1982) provides that if two or more persons conspire either to commit any offense against the United States or defraud the United States or any agency each shall be guilty of conspiracy. The elements of conspiracy are (1) an agreement to accomplish an illegal objective, (2) coupled with one or more acts in furtherance of the illegal purpose, and (3) the requisite intent necessary to commit the underlying substantive offense. *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir.1987). Here, the alleged underlying substantive offenses are uttering false statements as provided in 18 U.S.C. § 1991 and fraud and related activity in connection

with identification documents as provided in 18 U.S.C. § 1028.

18 U.S.C. § 1001 (Supp. II 1984) makes it a crime to knowingly and willfully falsify, conceal or cover up by any trick, scheme or device a material fact or make any false, fictitious or fraudulent statement or representation, or make or use any false writing or document in any matter within the jurisdiction of any department or agency of the United States. *United States v. Facchini*, 832 F.2d 1159, 1160 n. 1 (9th Cir.1987).

18 U.S.C. § 1028 (Supp. IV 1986) prohibits without lawful authority the knowingly producing, transferring, possessing with intent to unlawfully transfer, or possessing with intent to defraud the United States identification documents or false identification documents. *See Infra* Count 2; *See United States v. Gros*, 824 F.2d 1487, 1490 (6th Cir.1987).

■ Based on the evidence presented at trial as outlined above I find that the defendants knowingly and intentionally conspired to produce, possess and use false identification cards and make false statements to the FAA. At the time of arrest each defendant possessed identification documents that were obtained through uttering false statements to a federal or state agency or were produced unlawfully. The similarity of these cards and the fact of possession by each defendant establishes both an agreement toward an objective and an overt act. Additional false identification documents and blank identification documents were seized at the residence where all were living. The blank identification documents and the Texas notary seal are document-making implements under the statute. Based on these facts it is established through circumstantial evidence beyond a reasonable doubt that the defendants entered into an agreement to produce, possess and use false identification documents.

In addition the evidence establishes beyond a reasonable doubt that the defendants conspired to make false statements to the FAA. The evidence shows numerous statements made by Benjamin and Charles in obtaining pilots' licenses, student pilots'

licenses, responding to the investigation inquiries and registering of the aircraft. Constance Smith participated in the conspiracy through rental of a mailbox drop which was used by Charles under the name "Barrymore Rockefeller III" in his correspondence with the FAA. The evidence also establishes that Constance assisted Benjamin in the purchase of an airplane. The registration of this airplane was later accomplished by uttering false statements to the FAA. In addition blank FAA forms were seized at their residence.

The evidence establishes an agreement between Benjamin and Charles to obtain through the use of false statements licenses from the FAA, an agreement between Constance, Benjamin and Charles to use a mailbox drop to obtain correspondence from the FAA under the various names including "Barrymore Rockefeller III," an agreement between Constance and Benjamin to buy an airplane which was then registered through the use of false statements and an agreement between Benjamin and Charles to transfer title of the airplane through the use of false statements. The same evidence that establishes an agreement between the defendants also establishes the requisite overt act.

*Count 2*

Count 2 charges Constance, Charles and Benjamin with four acts in violation of 18 U.S.C. § 1028. Specifically they are charged with (1) knowingly and without lawful authority producing a false identification document, (2) knowingly possessing with intent to use unlawfully five or more false identification documents, (3) knowingly possessing a false identification document with the intent that such document be used to defraud the United States, and (4) knowingly possessing a document-making implement with the intent that such implement be used in the production of a false identification document.

18 U.S.C. § 1028 prohibits fraud and related activity in connection with identification documents. The defendants are charged with allegedly violating the following Sections:

(1) knowingly and without lawful authority producing an identification document or false identification document,

(3) knowingly possessing with intent to use unlawfully or transfer unlawfully five or more identification documents or false identification documents,

(4) knowingly possessing an identification document or false identification document with the intent such document be used to defraud the United States;

(5) knowingly producing, transferring or possessing a document-making implement with the intent that such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used; and

(6) possessing an identification document that is or appears to be an identification document of the United States which is stolen or produced without authority or knowing that such document was stolen or produced without authority.

An identification document is defined in 18 U.S.C. § 1028(d)(1) as:

a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a foreign government, political subdivision of a foreign government ... which when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

The statute does not define false identification documents. There are no reported cases defining false identification documents. The legislative history considers false identification cards, not documents. A thing is called "false" when it is done, or made, with knowledge, actual or constructive that it is untrue or illegal, or is said to be done falsely when the meaning is that the party is in fault for its error. *Black's Law Dictionary* 540 (5th ed. 1979). A statement, including a statement in a claim or document, is "false" if it was untrue by the person making it, or causing it to be made. *Id.*

■ Defendants argue that a false identification document can never be a genuine identification document, but can only be a document that appears to be a genuine document. After considering the overall mandate and the legislative history of the statute and the common law of this circuit, I disagree. I find that an "identification document" is an authentic or real document issued by some governmental body and a "false identification document" is *inter alia* a document procured by false statements or fraud and also may be a nonauthentic document.

The term "produce" includes altering, authenticating or assembling. 18 U.S.C. § 1028(d)(2) (Supp. IV 1986). The term "document-making implement" means any implement or impression specially designed or primarily used for making an identification document, a false identification document or another document-making implement. 18 U.S.C. § 1028(d)(3) (Supp. IV 1986).

■ An act is done "knowingly" if it is done voluntarily and intentionally rather than by mistake, accident or other innocent reason. *See e.g. United States v. Feola,* 420 U.S. 671, 676–86, 95 S.Ct. 1255, 1259–65, 43 L.Ed.2d 541 (1975); *United States v. Stanford,* 589 F.2d 285 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979); *United States v. Crutchley,* 502 F.2d 1195 (3rd Cir.1974); *United States v. Fierros,* 692 F.2d 1291 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

### Benjamin Smith

■ First, I consider the five alleged violations of § 1028(a) against Benjamin. I find evidence beyond a reasonable doubt establishing that Benjamin violated Section 1 of the statute by knowingly producing without legal authority false temporary airman certificates in the names of Pasqual Cabral (two), Robert Burke and Todd Baker; false FAA medical certificates in the names of Samuel Blakely, L.W. Chestnut and Todd Baker, false Idaho birth certificates in the names of Robert Burke, George Pasqual and William Crane and false New Jersey drivers' licenses in the names of L.W. Chester, Samuel Blake,

James Price and Todd Baker. I also find evidence beyond a reasonable doubt establishing that Benjamin violated Section 3 of the statute by producing and possessing more than five unlawful identification documents as listed in the preceding sentences. I find evidence beyond a reasonable doubt that Benjamin violated Section 4 of the statute by knowingly possessing a false identification document with the intent such document be used to defraud the United States and that Benjamin violated Section 6 of the statute by knowingly producing and possessing false identification documents that appear to be identification documents of the United States in the form of the above-listed FAA temporary medical airman certificates and FAA medical certificates. Finally I find evidence beyond a reasonable doubt that he violated Section 5 of the statute by knowingly possessing document-making implements with the intent to use the implement in the production of a false identification card by his possession of blank FAA temporary medical certificates, FAA temporary airman certificate with corrective tape covering the typed portion, blank Rhode Island birth registration card, Texas seal, blank New Jersey driver's license card, blank Idaho birth certificate, blank Social Security card and blank chauffeur's license form.

### Charles Smith

■ Next, I consider the alleged violations of § 1028(a) against Charles. I find evidence beyond a reasonable doubt that Charles violated Section 1 by knowingly producing without lawful authority two FAA temporary airman certificates and two FAA medical certificates in the name of Barrymore Rockefeller III. I find evidence beyond a reasonable doubt that Charles violated Section 4 by knowingly possessing a false identification document with the intent to defraud the United States by possessing the above-listed FAA certificates and three Idaho birth certificates in the name of Barrymore Rockefeller III, a Washington driver's license in the same name and further items of identification in the same name. I find evidence beyond a reasonable doubt that Charles

violated Section 3 of the statute by possessing more than five false identification documents as listed above. I find evidence beyond a reasonable doubt that Charles violated Section 5 of the statute by knowingly possessing document-making implements with the intent that such implement be used to produce a false identification document with possession of the Texas seal. Finally, I find evidence beyond a reasonable doubt that Charles violated Section 6 by possessing an identification document that appears to be an identification document of the United States knowing that it was produced without authority by his possession of duplicate false FAA temporary airman certificates and medical certificates.

### Constance Smith

■ Next I consider the alleged violations of § 1028(a) against Constance Smith. I find evidence beyond a reasonable doubt that Constance violated Section 5 by knowingly possessing document-making implements which would be used in the production of a false identification document by possessing the Texas seal, two blank Rhode Island birth certificates, a blank New Jersey driver's license, two blank Social Security cards and a blank chauffeur's license form. I find evidence beyond a reasonable doubt that Constance violated Section 6 by possessing an identification document that appears to be an identification document of the United States which is stolen or produced without authority knowing that such document was stolen or produced without authority by her possession of a blank Social Security card on her person at the time of her arrest.

### Conclusion

I find evidence beyond a reasonable doubt that Benjamin and Charles each violated Sections 1, 3, 4, 5 and 6 of 18 U.S.C. § 1028(a). I find evidence beyond a reasonable doubt that Constance violated Sections 5 and 6 of 18 U.S.C. § 1028(a).

### Count 3

In Count 3 Constance and Benjamin are charged with possession of a sawed-off rifle in violation of 26 U.S.C. §§ 5861 and 5871 (Supp. III 1985).

26 U.S.C. § 5861(d) states: "It shall be unlawful for any person ... to ... possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." *United States v. Fredman*, 833 F.2d 837, 838 (9th Cir.1987). 26 U.S.C. § 5845(a)(4) defines a "firearm" as including *inter alia* a weapon made from a rifle with a barrel length of less than 16 inches or an overall length of less than 26 inches.[2]

■ The element of possession does not require proof of exclusive possession and instead the government may demonstrate possession by proof of actual physical custody or constructive possession. *United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). To establish constructive possession, the government must produce evidence showing ownership, dominion, control, or power of disposal over the firearm. *United States v. Soto*, 779 F.2d 558, 560 (9th Cir. 1986) *amended* 793 F.2d 217 (9th Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987); *United States v. Castillo*, 844 F.2d 1379, 1392 (9th Cir.1988). Constructive and joint possession can be established by a showing that the firearm was found at defendants' residence if there is additional evidence specifically connecting the defendant to the firearm. *United States v. Alverson*, 666 F.2d 341, 345 (9th Cir.1982); *See United States v. Apker*, 705 F.2d 293, 309 (8th Cir.1983); *United States v. Merriweather*, 777 F.2d 503, 507 (9th Cir.1985) *cert. denied* 475 U.S. 1098, 106 S.Ct. 1497, 89 L.Ed.2d 898 (1986) (citing *Apker* with approval); *See e.g. United States v. Reese*, 775 F.2d 1066, 1073 (9th

---

**2.** The indictment charges a violation of 26 U.S.C. § 5845(a)(2) by possession of a sawed-off rifle. But section (a)(2) defines a sawed-off shotgun and section (a)(4) defines a sawed-off rifle. I have considered this error in accordance with Fed.R.Crim.P. 7(c)(3) and find it to be harmless error under *United States v. Morse*, 785 F.2d 771, 775 (9th Cir.) *cert. denied* 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986).

Cir.1985) (under 18 U.S.C.App. § 1202(a)(1) evidence of contraband discovered in residence is not in itself sufficient to support a conviction based on constructive possession against any of the residents).

### Benjamin Smith

■ First, I consider the alleged violation of 26 U.S.C. § 5861 against Benjamin. Jerry Tate, Special Agent of the United States Treasury Bureau of Alcohol, Tobacco and Firearms, testified that the rifle found in the bedroom closet at 624 Mitchell had a barrel length of 9⅝₁₆″ and an overall length of 22½″. A certificate of nonregistration of the weapon was admitted from the Bureau of Alcohol, Tobacco and Firearms. United States Marshall Ben Mahoney testified that the sawed-off rifle was located in a small closet in the master bedroom. The bedroom contained male and female articles of clothing and the closet in which the gun was located contained a prosthesis. There was testimony at trial that Benjamin wore a prosthesis of the variety found in the closet. It was established in the application for a search warrant of 624 Mitchell Street in the affidavit of Ben Mahoney that Deputy Mahoney and Jesse Haskins, Oregon State Police Detective had determined that Benjamin Smith aka L.W. Chester lived at that address.[3] Further, identification documents located in the master bedroom of the residence such as the Florida driver's license in the name of Leo W. Chestnut bearing a photograph resembling Benjamin establish that 624 Mitchell Street was his residence. Thus, I find evidence beyond a reasonable doubt that Benjamin possessed a firearm which was not registered to him as required under 26 U.S.C. § 5861(d).

### Constance Smith

■ Next, I consider the alleged violation of 26 U.S.C. § 5861 against Constance. She testified at the trial that she resided at 624 Mitchell Street and occupied the master bedroom with Benjamin. Constance stated that the shotgun and 9 mm pistol were hers but that she had never seen the sawed-off rifle. She further testified that other items in the small closet such as the broken prosthesis belonged to Benjamin. Although the testimony of Constance was impeached on numerous occasions at trial I do find it to be credible as to these statements. Although I find evidence beyond a reasonable doubt that Constance resided at 624 Mitchell Street and occupied the master bedroom, I do not find additional evidence linking Constance to the sawed-off rifle. Thus, I do not find Constance in violation of 26 U.S.C. § 5861.

### Conclusion

I find evidence beyond a reasonable doubt that Benjamin violated 26 U.S.C. § 5861 by possessing a sawed-off rifle in violation of Section (d). I do not find evidence beyond a reasonable doubt that Constance either actually or constructively possessed the sawed-off rifle and thus conclude she did not violate 26 U.S.C. § 5861.

### Count 4

In Count 4 Benjamin has been charged with knowingly receiving and possessing one or more firearms which had been shipped in interstate commerce after having previously been convicted of a felony and being a fugitive from justice in violation of 18 U.S.C. §§ 922(g) and 924(a)(1) (Supp. IV 1986).

18 U.S.C. § 922(g) makes it unlawful for any person who has been convicted in any court of a crime punishable by imprison-

---

**3.** At trial Benjamin Smith moved for reconsideration of his motion to suppress based on an illegal search. He contended *inter alia* that the search of 624 Mitchell Street was unlawful because the police officers searched a separate unit at 624½ Mitchell without a search warrant for that unit. Judge Frye heard and ruled on the motion. I reconsidered the motion during trial and held the search lawful. In considering the testimony at trial, the diagram of the resi-

dence and in reviewing once again the evidence received at the suppression hearing I am convinced that the search was lawful. Further the facts that identification for Barrymore Rockefeller III was found in the master bedroom and identification for William Crane and George Pasqual was found upstairs convinces me beyond a reasonable doubt that all defendants had access to the entire residence.

ment for a term exceeding one year or who is a fugitive from justice to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm ..., or to receive any firearm ... which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 921(a)(3) defines a "firearm" as any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive. The term does not include an antique firearm. An antique firearm is defined *inter alia* as any firearm manufactured in or before 1898. 18 U.S.C. § 921(a)(16).

█ One element that the government must establish is that the weapon is not an antique in that it was not manufactured in or before 1898. This was never established and thus I must find Benjamin not guilty.

### Count 5

In Count 5 Constance and Charles are charged with knowingly and willfully harboring and concealing Benjamin after his escape from a Federal penal institution in violation of 18 U.S.C. § 1072 (1982).

To meet its burden under 18 U.S.C. § 1072 the government must prove that the defendant "willfully" harbored or concealed a prisoner and had knowledge that the person whom he aided was an escapee. *United States v. Eaglin,* 571 F.2d 1069, 1074–5 (9th Cir.1977) *cert. denied* 435 U.S. 906, 98 S.Ct. 1453, 55 L.Ed.2d 497 (1978). Willfulness connotes an act which is "voluntary and purposeful and ... committed with the specific intent to do or fail to do what [the defendant] knows is unlawful." *United States v. Lizarraga–Lizarraga,* 541 F.2d 826, 828 (9th Cir.1976).

█ The words harbor and conceal refer to any physical act of providing assistance, including food, shelter, and any other assistance to aid the prisoner in avoiding detection and apprehension. *United States v. Kutas,* 542 F.2d 527, 529 (9th Cir.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977).

### Constance

First I consider the alleged violation of 18 U.S.C. § 1072 against Constance. At trial Constance testified that she did not know that Benjamin had escaped. She stated that he told her he was on "no contact parole" and that it never occurred to her to disbelieve him. Further she testified that Officer Kennard did not advise her of Benjamin's escape status during a traffic stop in Boulder City in 1984. I find the testimony of Constance to be not credible. Constance was impeached repeatedly. Of particular import were the questions regarding Benjamin's 1970 conviction and escape. At that time he allegedly told her that he was released on "no contact parole" also. Following his subsequent arrest she was charged with harboring, but the charges were later dropped. According to Constance the prior instance did not indicate to her that the same situation might be occurring again.

Constance testified that Benjamin contacted her before she left Georgia in the fall of 1983 after their divorce was final, that they started seeing each other and eventually began to live together again. Because she felt that she was under surveillance and to escape the notoriety and pressure that she felt when she used her name, she used the name "Shauna Hills" when "it became available to her." Constance testified that she used this name exclusively. However, she went on to testify that she did change her name to "Shauna Judge" and then to "Laura Judge" after a decision by a respected judge in a case involving her husband. Further she testified that she used the name "Rae Ann Judge" to register a DeLorean automobile which she purchased as an investment. Constance also testified that she applied for and retained a birth certificate for "Mary Kay Adams" because "it was available to her." She claimed no intent to defraud the government by obtaining various pieces of identification and using various names.

Constance further testified that she was aware of the presence in the residence of identification documents of Benjamin and Charles in the names of Chestnut, Rockefeller and Burke. Benjamin and Charles used these names, she testified, because of

the notoriety and difficulty of using their name, "Smith."

During argument defense counsel contended that the use of the various names by the defendants was not with intent to defraud but rather was simply the lawful use of an assumed name. I do not accept this argument. The evidence is overwhelming that the defendants were using numerous names, not one assumed name. Further the explanation that they used other names to escape the notoriety of the name "Smith" after moving from Carrolton, Georgia to Klamath Falls, Oregon is ludicrous.

 I am convinced from her own testimony that Constance acted voluntarily and purposefully in her actions that harbored and concealed Benjamin. I find that Constance assisted Benjamin in providing him lodging through the transfer of the house at 624 Mitchell Street from L.W. Chester to Shauna Hills, through acquisition of utilities for the house in the names of Shauna Hills and L.W. and Connie Chester and by renting mail drops. I find that Constance further concealed Benjamin by helping him purchase an airplane with the use of aliases and cashiers' checks. With special consideration of Constance's knowledge of Benjamin's various aliases, her presence at his bond hearing, her own use of three aliases, I find evidence beyond a reasonable doubt that Constance knew that Benjamin was an escapee. Thus, I find evidence beyond a reasonable doubt that Constance willfully harbored and concealed Benjamin in violation of 18 U.S.C. § 1072.

*Charles Smith*

 The evidence against Charles Smith is equally compelling. I find evidence beyond a reasonable doubt that Charles harbored and concealed Benjamin by assisting him to acquire an airplane through transactions involving false statements to the FAA, by retaining Benjamin's true birth certificate in a storage room/office off Charles' bedroom, and by providing false statements to the FAA. I find evidence beyond a reasonable doubt that Charles concealed Benjamin by possessing instructions regarding obtaining false identification and by producing and

using FAA temporary airman certificates and medical certificates under various aliases. Further, the evidence that the true birth certificates of all three defendants were stored in the area of the residence occupied by Charles and the producing of Idaho birth certificates that both Benjamin and Charles used further convinces me of Charles' knowing participation. In addition, the close association of Charles in the home with his mother and father, together with the multiple use of aliases and false documents speaks of secrecy and protection of true identities. Finally, Charles was the driver of the car in which Benjamin was a passenger from the last truck stop to the scene of the arrest. Thus, I find evidence beyond a reasonable doubt that Charles willfully harbored and concealed Benjamin in violation of 18 U.S. C. § 1072.

CONCLUSION

I find Benjamin Smith guilty of conspiracy in violation of 18 U.S.C. §§ 371, 1001 and 1028; guilty of fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(1), (3), (4), (5) and (6); guilty of possession of a sawed-off rifle in violation of 26 U.S.C. §§ 5861 and 5871 and not guilty of being an ex-felon in possession of a sawed-off rifle in violation of 18 U.S.C. §§ 371, 922(g) and 924(a)(1).

I find Constance Smith guilty of conspiracy in violation of 18 U.S.C. §§ 371, 1001 and 1028; guilty of fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(5) and (6); not guilty of fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(1), (3) and (4); not guilty of possession of a sawed-off rifle in violation of 26 U.S.C. §§ 5861 and 5871 and guilty of willfully harboring and concealing an escapee in violation of 18 U.S.C. § 1072.

I find Charles Smith guilty of conspiracy in violation of 19 U.S.C. §§ 371, 1001 and 1028; guilty of fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(1), (3), (4), (5) and (6) and

guilty of willfully harboring and concealing an escapee in violation of 18 U.S.C. § 1072.