**UNITED STATES of America, Plaintiffs,**

v.

**Stefan COELLO, a/k/a "Stefan Waldemar Coello–Ubillo," Defendant.**

**No. 95 Cr. 382 (DAB).**

United States District Court,
S.D. New York.

Oct. 12, 1995.

David C. Esseks, Assistant United States Attorney, New York City, for plaintiffs.

Harvey Fishbein, Friedland Fishbein Laifer & Robbins, New York City, for defendant.

## OPINION

BATTS, District Judge.

The Government has moved this Court to rule, prior to preparation of the presentence report, whether certain items found in the defendant's possession constitute "identification documents" or, in the alternative, whether defendant attempted to possess, with the intent to transfer or use, identification documents within the meaning of 18 U.S.C. § 1028. For the following reasons, the Gov-

ernment's motion is granted in part and denied in part.

## I. FINDINGS OF FACT

On June 5, 1995, the defendant Stefan Coello pled guilty before this Court to a one-count information charging him with a violation of 18 U.S.C. § 1028, based on his sale of three sets of counterfeit social security cards and alien registration cards to a confidential informant on two separate occasions in October and November 1994. (Government's Mem. Law at 1; Def.'s Mem. of Law at 2). Coello pled guilty pursuant to a plea agreement with the Government. (Government's Mem. Law at 1).

The evidence in the current motion regards separate circumstances from those underlying the guilty plea. In the summer of 1994, the INS obtained a black carrying bag that subsequently proved to belong to the defendant. (decl. of Matthew Gordon at 5). The INS obtained the bag from Ms. Victoria Olivieri, who had purchased a vehicle at a New York City Sheriff's Office auction in May 1994. *Id.* The vehicle had been seized by the Sheriff's Office on March 31, 1994, for nonpayment of parking tickets. *Id.* The New York State Department of Motor Vehicles' records indicated that the car was owned by the defendant. *Id.* In the trunk of that vehicle Ms. Olivieri found a bag and gave it to the police who subsequently transferred it to the INS. *Id.* The bag contained:

—four enlarged color photographs of a counterfeit I–551 alien registration card with the defendant's photograph but a different name and INS alien number,

—a small, identification-sized photograph of a male, to which was paper-clipped a signature and biographical information,

—one bundle of 73 clear, blank laminates,

—one bundle of 41 laminates imprinted with gold Department of Justice/Immigration and Naturalization Service seals, and

—one bundle of 24 laminates imprinted with an outline of the continental United States and text.

(decl. Matthew Gordon at 6). The Defendant does not deny that the bag belonged to him. (Def.'s Mem. Law at 2).

Each laminate in the bundle of 41 laminates resembles the front laminate of an I–688 Temporary Resident card and each laminate in the bundle of 24 laminates resembles the back laminate of an I–688 card. (decl. Matthew Gordon at 6). The I–688 Temporary Resident cards are issued by the INS pursuant to 8 C.F.R. pt. 210.2 (1995) to agricultural workers who meet specific qualifications. *Id.* at 2. The card enables workers to reside and work in the United States as well as to travel abroad and return to the United States. *Id.*

The I–688 card consists of three parts: an internal card which contains the temporary resident's picture, name, date of birth, signature, fingerprint and an unique INS "A" number, which is inserted between two laminates; *Id.* at 3, a front laminate containing DOJ/INS seals placed so that one full seal is in the middle of the laminate and another seal is split, so that part of it is at the top of the card and the other part is at the bottom of the card; (2d decl. Matthew Gordon at 2), and a back laminate containing text describing the function of the I–688 card, an outline of the continental United States in green ink, the text "FORM I–688 MAY 87" in green ink at the margin of the laminate, and outlines of the United States in black-light ink, again placed so that one full outline is in the middle of the laminate and a second outline is split so that part of it appears at the top of the card and the other part appears at the bottom of the card. (decl. Matthew Gordon at 4). The bundles of laminates found in the defendant's possession closely resemble the laminates used for the I–688 cards.

On March 30, 1995, the Forensic Documents Laboratory of the INS examined the laminates found in the defendant's possession. The laboratory concluded that the laminates were counterfeit INS documents.[1]

---

1. *Id.* at 7. The laminates found in the defendant's possession differ slightly from a genuine I–688 card. The defendant's front laminates contain the DOJ/INS gold seal "albeit imperfectly rendered." (decl. of Matthew Gordon at 6). The back laminates contain text that is identical, except for a dropped period at the end of the first paragraph. *Id.* It also contains an accurate, but

## II. DISCUSSION

The Government's motion asks this Court to define the documents found in the defendant's vehicle as "identification documents," so that, under Sentencing Guidelines § 2L2.1, the possession of 25 to 99 cards increases the base offense level by four. For the reasons more fully set out below, I find that the laminates found in the defendant's possession are not "identification documents," but the defendant's behavior does fit within the definition of an attempt to possess identification documents under 18 U.S.C. § 1028(a)(3); possession of a document-making implement under 18 U.S.C. § 1028(a)(5), and an attempt to produce identification documents under 18 U.S.C. § 1028(a)(1).

### A. Whether INS I–688 Cards Constitute "Identification Documents" Within the Meaning of 18 U.S.C. § 1028(d)(1)

18 U.S.C. § 1028(d)(1) defines identification documents as follows:

> [A] document made or issued by or under the authority of the United States Government, ... which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals.

There is no dispute that a completed, valid I–688 card, i.e. one with both laminates and the internal card that contains the pertinent information regarding the bearer, is an identification document. (Government's Mem. Law at 8; Def.'s Mem. Law at 3).

The Government argues that this definition includes not only a fully completed document, but also a blank document. The words of the statute support this contention, i.e., identification documents include those that *"when completed"* constitute a document. Legislative history also supports this contention. *See* H.R.Rep. No. 802, 97th Cong., 2d Sess. 9 (1982), *reprinted in* 1982 U.S.Code Cong. & Admin. News 3519, 3527 (identifica-

tion documents include "blank identification documents which have not been completed with information relating to a particular person") (hereinafter "House Report"); *see also United States v. Smith,* 685 F.Supp. 1523, 1530–31 (D.Or.1988), *cert. denied,* 493 U.S. 869, 110 S.Ct. 194, 107 L.Ed.2d 149 (1989).

██ The Government contends that the laminates in the defendant's possession are blank documents and therefore are included in the definition of identification documents. The defendant argues that the laminates are not blank documents, but incomplete documents, because the internal cards are missing.

Beginning with the language of the statute, an identification document is one which "when completed with information" identifies an individual. The laminates do not have an area to insert or print information. If the laminates were laminated together they would not constitute an identification document; therefore, the laminates are not blank documents, but incomplete documents.[2] Although, it appears clear that the only purpose these laminates were to serve was to make counterfeit identification documents, they are not in their present state, identification documents under the statutory definition.

### B. Possession of the I–688 Laminates Constitutes an Attempt to Possess False Identification Documents

██ However, the defendant's possession of the laminates does constitute an attempt to possess identification documents.

██ The law of attempt is well-settled: one is guilty of an attempt to commit an offense if one (a) intended to commit the offense and (b) took some action that was a "substantial step" in an effort to bring about the offense. *See, e.g., United States v. Rosa,* 11 F.3d 315, 337 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1565, 128

---

for the placement over the text, outline of the continental United States in green ink. *Id.* at 6–7. The laminates do not contain the black-light ink outline of the United States. *Id.* Thus, the laminates in the defendant's possession would be counterfeit INS documents.

**2.** The legislative history does not aid with regard to whether parts of an identification document constitute an identification document within the meaning of the statute.

L.Ed.2d 211 (1994); *United States v. Martinez*, 775 F.2d 31, 35 (2d Cir.1985). A "substantial step" entails "more than mere preparation." *United States v. Manley*, 632 F.2d 978, 987 (2d Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

Under 18 U.S.C. § 1028(a)(3), whoever "knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents ... or false identification documents ... or attempts to do so shall be punished...." Here, the defendant possessed laminates whose sole function was to counterfeit INS identification documents. In satisfaction of the first element of an attempt offense, the defendant does not deny that he possessed the laminates and therefore he intended to possess them. Second, the defendant took a substantial step in his effort to possess identification documents. Most of the security features that are found in a genuine I–688 cards (explained above) are incorporated into the laminates and not into the internal paper of the completed card. Defendant's laminates contain fairly high quality replicas of all of those security features that are visible to the naked eye. The designs on the I–688 card and on the laminates found in the defendant's possession are only found on the I–688 card. Therefore, the defendant has taken a substantial step toward the commission of the 18 U.S.C. § 1028(a)(3) offense when he possessed the laminates which were sophisticated replicas of the I–688 cards.

C. Possession of the I–688 Laminates Constitutes Possession of a Document–Making Implement

Furthermore, under 18 U.S.C. § 1028(a)(5), whoever "knowingly ... possesses a document-making implement with the intent such document-making implement will be used in the production of a false identification document or another document-making implement which will be so used ... shall be punished...." The word "produce" includes the terms "alter, authenticate, or assemble" 18 U.S.C. § 1028(d)(2), and "document-making implement" is defined as, "any implement or impression specially designed or primarily used for making an identification document, a false identification document or another document-making implement." 18 U.S.C. § 1028(d)(3).[3]

■ First, the Court must address whether the laminates constitute document-making implements. A document-making implement includes an impression. An "impression" is "[t]he effect, mark, or imprint made on a surface by pressure." Webster's II New Riverside University Dictionary 615. The Court finds that each laminate contains an impression. For example, the top laminate contains the impression of the DOJ/INS seal and the bottom laminates contains the impression of the outline of the continental United States. Hence, the laminates constitute document-making implements.

■ Next, the Court addresses whether the impression was intended to be used in the production of an identification document. As defined above, to "produce" includes to "assemble." The defendant had two of the three parts necessary to assemble an I–688 identification document. Furthermore, it has been established that the laminates' only use would be to assemble false I–688 cards. Hence, his possession of two of the three

---

**3.** Examples of document-making implements appear in other decisions. For example, the court found evidence beyond a reasonable doubt that defendants were guilty of 18 U.S.C. § 1028(a)(5) when they possessed "laminating materials, rub on lettering materials, laminating machine, photos with backdrops, blank driver's licenses from the States of Tennessee and Connecticut, and one partially completed State of Tennessee driver's license." *United States v. Pearce*, 65 F.3d 22 (4th Cir.1995). Furthermore, by possessing the "Texas seal, two blank Rhode Island birth certificates, a blank New Jersey driver's license, two blank Social Security cards and a blank chauffeur's license form" the court found evidence beyond a reasonable doubt that the defendant violated 18 U.S.C. § 1028(a)(5). *United States v. Smith*, 685 F.Supp. 1523, 1531 (D.Or.1988), *cert. denied*, 493 U.S. 869, 110 S.Ct. 194, 107 L.Ed.2d 149 (1989). By possessing "blank FAA temporary medical certificates, [a] FAA temporary airman certificate with corrective tape covering the typed portion, [a] blank Rhode Island birth registration card, [a] Texas seal, [a] blank New Jersey driver's license card, [a] blank Idaho birth certificate, [a] blank Social Security card and [a] blank chauffeur's license form" the court found evidence beyond a reasonable doubt that the defendant violated 18 U.S.C. § 1028(a)(5). *Id.* at 1530.

necessary parts used to produce an I–688 identification documents; possession of document-making implement.

### D. Possession of the Laminates Constitutes an Attempt to Produce Identification Documents

 As stated above, an attempt requires a substantial step made by the defendant in committing the crime. Under 18 U.S.C. § 1028(a)(1) whoever, "[K]nowingly and without lawful authority produces an identification document or a false identification document ... or attempts to do so, shall be punished."

In order to assemble an I–688 card three pieces are necessary: an internal card containing all pertinent identification information and two laminates, one on the front of the card and one on the back of the card. Here the defendant had two of the three pieces needed to assemble the I–688 card. Possessing most of the parts to complete a crime would be considered a substantial step in completing the crime; hence, the defendant attempted to produce an identification document without lawful authority.

### E. Congress' Intent

Finally, it is worth noting that Congress intended the False Identification Crime Control Act of 1982, which enacted 18 U.S.C. § 1028, to "serve as a strong deterrent to false identification-related crime and to the manufacturers and distributors of false identification in particular." House Report at 3526. To read the statute to exclude completely the pairs of laminates found in this case would undermine the purpose of the Act. If manufacturers and distributors of false identification cards could escape liability simply because they had not completely assembled all of the counterfeit parts, or because they had counterfeited the more difficult parts but not the whole document, the efficacy of the statute would be greatly reduced.

Accordingly, I find that although the laminates do not fall within the definition of "identification documents," under Sentencing Guidelines § 2L2.1, the defendant's behavior does constitute: an attempt to possess 24 identification documents; possession of document-making implements; and an attempt to produce identification documents.

SO ORDERED.